Louis J. SHANE and Elizabeth L. Shane, husband and wife; Steven M. Thornell; Jeffrey Ischar; James Brockman, Plaintiffs–Appellants,

v.

GREYHOUND LINES, INC., a foreign corporation; Amalgamated Council of Greyhound Divisions Amalgamated Transit Union, Locals 1055 and 1384, Defendants–Appellees.

No. 87–3526.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1988.

Decided Feb. 27, 1989.

(1932)).

employees seek damages for wrongful discharge under federal labor law and state tort and contract law. We affirm the district court's grant of summary judgment for Greyhound.

## BACKGROUND

Appellants Louis Shane, Steven Thornell, James Brockman, and Jeffrey Ischar were discharged from their positions as Greyhound maintenance workers a few months after the conclusion of a long, unsuccessful strike in which these four apparently played a significant role. Their discharge notices cite the reason for discharge as destruction of company property and harassment of other workers, charges based on graffiti written on the terminal's walls, lockers, and other property during the strike.

Appellants filed grievances with their union, the Amalgamated Transit Union, Locals 1055 and 1384 ("the Union"). Pursuant to a collective bargaining agreement (CBA) containing a final and binding arbitration clause, the Union is the exclusive bargaining representative for these Greyhound employees. Appellants also filed unfair labor practice charges with the National Labor Relations Board (NLRB), alleging they had been terminated because of their union and strike activity in violation of Sections 7 and 8 of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 157 and 158.

The Union pursued each appellant's grievance through successive stages, up to and including the selection of three-party arbitration panels. At the onset of the arbitration hearings, it reached a settlement with Greyhound. The Union believed the settlement it had obtained—reinstatement with seniority, and back pay less one month—was fair and would meet with appellants' approval. Appellants contend that, contrary to their wishes, the settlement did not include language preserving

Sam B. Franklin, Seattle, Wash., for plaintiffs-appellants.

Curman Sebree, Tacoma, Wash., for defendants-appellees.

Before WALLACE * and FLETCHER, Circuit Judges, and AGUILAR,** District Judge.

FLETCHER, Circuit Judge:

Appellants, Greyhound maintenance workers, brought this wrongful discharge action against their employer, Greyhound Lines, after the employees' union had already grieved the matter under the collective bargaining agreement and had accepted a settlement from Greyhound on their behalf. Appellants disapproved of the Union's settlement because it did not expressly reserve their rights to bring further action against Greyhound. In this suit the

* Hon. J. Clifford Wallace, United States Circuit Judge for the Ninth Circuit, replaced Hon. J. Blaine Anderson who died after argument and submission of this case.

** Hon. Robert P. Aguilar, United States District Judge for the Central District of California, sitting by designation.

their rights to pursue additional damage claims against Greyhound. They did, however, return to work and cash their backpay checks.

The NLRB dismissed the unfair labor practice charges, saying that further proceedings were not warranted since the grievance had been settled. Appellants did not appeal the dismissal, apparently feeling that would be futile. Instead, they brought this action in federal district court against Greyhound and the Union, seeking redress for violation of their rights not fully compensated under the settlement.[1]

The district court granted Greyhound's motion for summary judgment on all counts. It found that the tort claims were preempted by LMRA § 301 and NLRA §§ 7 and 8, and that appellants had failed to raise an issue of material fact that could defeat summary judgment on the claim for breach of the Union's duty of fair representation. This appeal followed.

### STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

### DISCUSSION

I. *Wrongful Discharge for Union Activity*

Appellants allege federal claim for wrongful discharge—that they were wrongfully terminated for their union activities during the strike. This claim encompasses both a breach of the CBA and an unfair labor practice. Both allegations fail but for different reasons: (1) the CBA breach cannot be brought against the employer because appellants have failed to show the Union breached its duty of fair representation; and (2) the unfair labor practice charge is preempted by NLRA §§ 7 and 8.

A. *Breach of the Duty of Fair Representation*

 Appellants' federal wrongful discharge claim is effectively a suit for breach

of the CBA, and as such states a claim under LMRA § 301, 29 U.S.C. § 185(a). Federal courts have concurrent jurisdiction with the NLRB if an activity claimed to be an unfair labor practice also allegedly violates a collective bargaining agreement. *Lumber Production Industrial Workers v. West Coast Industrial Relations Association, Inc.*, 775 F.2d 1042, 1045 (9th Cir. 1985). However, an employee subject to a CBA who makes his or her union the exclusive bargaining agent must prove that the union breached its duty of fair representation before proceeding with a § 301 suit against the employer. *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 572, 96 S.Ct. 1048, 1060, 47 L.Ed.2d 231 (1976). Appellants have failed to make a case that the Union breached its duty of fair representation.

Appellants' two most likely grounds for showing a breach are first, the Union's acceptance of a settlement rather than proceeding to arbitration; and second, appellants' contention that the Union discriminates against maintenance workers, and in favor of drivers, in its handling of grievances.

 The first ground fails because of the great deference we accord unions' handling of grievances. For a union to breach its duty of fair representation, its conduct in handling the grievance must be "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. at 916; *Peterson v. Kennedy*, 771 F.2d 1244, 1253–54 (9th Cir.1985) ("We have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance."), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). A union's representation need not be error free. *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1482 (9th Cir. 1985).

**1.** The parties have since stipulated to dismissal without prejudice of the Union as a party.

Here, the Union's pursuit of appellants' grievances through to setting arbitration hearings was not a "perfunctory" handling that would constitute "arbitrary" treatment, *Peterson,* 771 F.2d at 1254, nor was its decision to accept a settlement which gave the employees reinstatement, back pay (less one month), and a return to seniority an arbitrary or bad faith exercise of judgment. *Scott v. Machinists Automotive Trades Dist. Lodge No. 190,* 827 F.2d 589, 593 (9th Cir.1987). Appellants' contemporaneous objections to the settlement do not render the Union's acceptance of it a bad faith act. When employees make their union the sole bargaining representative with the employer, they relinquish the right to control the settlement of their grievances. Unions are free to negotiate and accept settlements even without the grievants' approval. *Scott v. Machinists,* 827 F.2d at 593; *Otero v. International Union of Elec., Radio and Machine Workers,* 474 F.2d 3, 4 (9th Cir.1973); *Borg v. Greyhound Lines, Inc.,* 116 L.R.R.M. 3315 (N.D.Cal.1984) [1984 WL 14332].

Furthermore, the settlement agreement as it was accepted by the Union did not prejudice appellants' other claims. While not expressly reserving the appellants' rights, the settlement did not affirmatively assert that the appellants had waived all rights to other claims against Greyhound. In addition, the provision appellants wanted to include in the settlement—an explicit right to go against Greyhound for additional damages—would have been toothless, since the additional damage claims they believed they could bring were not available, under federal law, to employees bound by the terms of a collective bargaining agreement.

Appellants second ground—discriminatory treatment of maintenance workers —is based solely on the affidavit of Steven Thornell. Because the affidavit contains only conclusory allegations, not backed up by statements of fact, it cannot defeat a motion for summary judgment. *Angel v.*

*Seattle–First Nat'l Bank,* 653 F.2d 1293, 1299 (9th Cir.1981). We further note that appellants' attorney had over a year in which to conduct discovery to support this claim, thus, the district court did not abuse its discretion in denying Plaintiffs' Motion for Reconsideration of the Grant of Summary Judgment when the motion sought additional time for discovery.

B. *NLRA Preemption of Wrongful Discharge for Union Activities*

Appellants assert a federal wrongful discharge claim that they were terminated for their active participation in the strike.[2] While federal courts share concurrent jurisdiction with the Board over an activity constituting an unfair labor practice and allegedly violating section 301, here, the employees cannot sustain a section 301 action. Aside from section 301 claims, any federal or state claim for wrongful discharge based on union activity is preempted by NLRA §§ 7 and 8. 29 U.S.C. §§ 157, 158; *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *Garmon* preemption is intended to protect the NLRB's exclusive jurisdiction over unfair labor practice charges.

Here, appellants first appropriately brought their wrongful discharge claims before the NLRB, which dismissed them. Instead of appealing that dismissal, appellants have restated the claim and included it in this action. Assuming for the sake of argument that appellants' failure to appeal the NLRB dismissal does not estop them from filing the parallel claim, their claim is preempted under *Garmon,* as the district court found in its order.

II. *Section 301 Preemption of State Law Claims*

Appellants also allege several state law tort claims; specifically, wrongful discharge in violation of public policy, wrongful withholding of wages, defamation, intentional infliction of emotional distress, and wrongful death. Most of these state

---

**2.** They also allege a state law wrongful discharge claim, alleging that they were terminated

for "whistle blowing." *See infra* Section II A.

claims are preempted by LMRA § 301; wrongful discharge was inadequately pleaded.

■ A state law claim is preempted by § 301 if it is "inextricably intertwined" with the terms of a CBA. As framed by the Supreme Court, the test is:

> whether the [state tort action] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202 at 213, 105 S.Ct. 1904 at 1912, 85 L.Ed.2d 206 (1985). Section 301's "extraordinary preemptive power" based on CBA interpretation has recently been reconfirmed by the Supreme Court in *International Bhd. of Elec. Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 2164–66, 95 L.Ed.2d 791 (1987). *See also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). However, if the presence of the necessary elements of a state claim can be ascertained without recourse to interpretation of the CBA, the state law remedy is not preempted. *Lingle v. Norge Div. of Magic Chef, Inc.,* — U.S. —, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). The fact that the claim requires "addressing precisely the same set of facts" is not enough to implicate § 301 preemption. *Id.* 108 S.Ct. at 1883.

## A. *Wrongful Discharge for Violation of Public Policy.*

Appellants have attempted to construct a claim for wrongful discharge in violation of public policy, alleging that one reason they were terminated was their "whistle-blowing", such that their termination contravenes the policies of the Washington Industrial Safety and Health Act, Wash.Rev. Code § 49.17.010. They attempt to substantiate the assertion with an affidavit stating that they complained to management about co-workers who used alcohol and narcotics, and who displayed firearms, in the workplace, but that they were told to stop complaining. We need not determine whether this claim is preempted by § 301 because appellants have failed to state a claim sufficient to defeat summary judgment.

Washington State recognizes a cause of action in tort for wrongful discharge "if the discharge of the employee contravenes a clear mandate of public policy." *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 232, 685 P.2d 1081 (1984). To determine if a violation has occurred, "courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy." *Id.* (quoting *Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 380, 652 P.2d 625 (1982)). The exception, however, is "narrow"; "courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject." *Id.*

> The burden of proof is on the employee: "[T]o state a cause of action, the employee must plead and prove that a stated public policy, either legislatively or judicially recognized, may have been contravened. This protects against frivolous lawsuits and allows trial courts to weed out cases that do not involve any public policy principle. It also allows employers to make personnel decisions without fear of incurring civil liability."

*Id.* 102 Wash.2d at 232–33, 685 P.2d 1081. Not until "the employee has demonstrated that his discharge may have been motivated by reasons that contravene a clear mandate of public policy, [does] the burden shift[] to the employer to prove that the dismissal was for reasons other than those alleged by the employee." *Id.*

■ Appellants did not initially plead "whistle-blowing". Their complaint alleges only wrongful discharge for their union activities. An affidavit in response to de-

fendant's summary judgment motion, however, states that appellants were terminated for their whistle-blowing activities, among others. But, as appellee's brief notes, not until their brief to this court did appellants specify Wash.Rev.Code 49.17.-010 as the "stated public policy" that their discharge contravened.

We decline to construe liberally appellants' pleadings so as to include the allegation of a violation of Wash.Rev.Code 49.17.-010. Furthermore, appellants have not adequately alleged material facts. Thornell's affidavit contains mere unsupported allegations of complaints they made, and shows no connection between the complaints and their discharges. This, without more, fails to defeat summary judgment. *Angel v. Seattle–First Nat'l Bank*, 653 F.2d at 1299.

**B.** *State Wrongful Withholding of Wages.*

■ Appellants allege a claim under Wash.Rev.Code §§ 49.52.050(2) and 49.52.-070, which provide exemplary double damages in addition to compensatory damages for wages wrongfully withheld. This claim for wrongful withholding of wages is inextricably intertwined with whether appellants were wrongfully discharged pursuant to the CBA. Therefore, such a claim would have to be considered a § 301 claim.

**C.** *State Defamation Claim.*

■ Appellants' defamation argument is similarly preempted by § 301; furthermore, it is meritless. Neither the complaint nor the appellate brief allege specific facts to support this defamation claim—i.e., what documents or statements were defamatory, or to whom the defamatory information was published. The claim appears to rest on the Notices of Intent to Discipline, which, along with the discharge notices, are the only documents in the record containing the allegations of wrongdoing.

The CBA requires employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their Union.[3] Any claim based on the discharge notification is, therefore, "inextricably intertwined" with the CBA. The instant case is distinguishable from *Tellez v. Pacific Gas and Elec. Co.*, 817 F.2d 536 (9th Cir.) *cert. denied,* —— U.S. ——, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987), where the employee's non-preempted defamation claim was based on his manager's sending copies of his discharge letter, which stated that he was observed purchasing cocaine, to eleven other PG & E managers. Also, as the *Tellez* panel pointed out, Tellez's CBA contained no provisions requiring written notification of suspension. 817 F.2d at 538.[4]

**D.** *State Intentional Infliction of Emotional Distress Claim.*

■ This claim lacks specificity, and, arising out of the same conduct which formed the basis of the defamation claim, is likewise preempted under § 301 for being essentially a claim "that administration of discipline was improper under the standards set by the collective bargaining agreement[ ]". *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1350 (9th Cir. 1985). In contrast, in *Tellez* our finding that an emotional distress claim was not preempted by § 301 hinged upon the fact that Tellez's CBA "is silent on work conditions, and vague on disciplinary formalities." 817 F.2d at 539.

---

**3.** "An employee will not be disciplined or discharged, nor will entries be made against his record without sufficient cause, and in each case where disciplinary action is taken he will be given a complete written statement of the precise charges against him and the disciplinary action to be taken. Such written statement will be furnished to the employee ... prior to the commencement of such discipline. Notification thereof shall be furnished to the local division of the Union simultaneously therewith." CR 22, Exhibit 1, Article A2(k).

**4.** Greyhound draws our attention to another circuit's holdings that statements either required by the CBA or arising out of the grievance proceedings are absolutely privileged. *Hasten v. Phillips Petroleum Co.*, 640 F.2d 274 (10th Cir.1981); *General Motors Corp. v. Mendicki*, 367 F.2d 66 (10th Cir.1966). The *Tellez* panel reserved judgment on this question, and so do we.

1064

### E. State Wrongful Death Claim.

Appellant Estate of Ischar's claim for damages for "wrongful death for the loss of a chance at survival" also is preempted under § 301. Ischar's claim is that his fatal intestinal cancer might have been detected sooner if he had had medical benefits coverage or adequate financial resources during the period prior to his reinstatement. In essence, this is a claim for wrongful deprivation of medical benefits and wages. Ischar's entitlement to medical benefits and wages was governed by the CBA's provisions regarding discharge for "sufficient cause." As such, the claim is preempted.

### III. Attorneys Fees—Rule 11 Sanctions

Appellee moves the court for attorneys fees under Fed.R.Civ.P. 11 and § 301.

We decline. The law in this area is not only complicated but evolving. *See Lingle v. Norge,* 108 S.Ct. 1877.

The district court's grant of summary judgment on all counts is AFFIRMED.