108 F.3d 337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Di-Jing HU, Plaintiff-Appellant,
v.
JOHN HANCOCK MUTUAL LIFE INSURANCE CO.; Edwin Corson;
Thomas Lin, Defendants-Appellees.
 No. 95-56428.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1997.
Decided Feb. 21, 1997.
 
 1
 Before: D.W. NELSON, TROTT, Circuit Judges, and ROBERT J. BRYAN*, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Di-Jing Hu appeals the district court's grant of summary judgment in favor of the John Hancock Mutual Life Insurance Company, Edwin Corson, and Thomas Lin (hereinafter collectively "Hancock"). Hu brought multiple state law employment claims against Hancock after she was fired from her job as a marketing representative. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 I. Standard of Review
 
 4
 A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Viewing the evidence in the light most favorable to Hu, this court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 II. Preemption
 
 5
 With the exception of Hu's employment discrimination claims, all of Hu's claims are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).
 
 
 6
 Section 185(a) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." This circuit has held that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Jackson v. Southern Cal. Gas Co., 881 F.2d 638, 642 (9th Cir.1989) (internal quotations and citations omitted). Moreover, the preemptive effect of § 301 extends beyond claims for breach of contract to encompass "suits under state tort law that would frustrate the federal labor-contract scheme established in § 301." Id. at 643 (internal citations and quotations omitted).
 
 
 7
 In deciding whether § 301 preempts a state law claim, a court should consider whether the state claim is "inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). A state claim is preempted if the claim "require[s] interpretation of a collective bargaining agreement." Jackson, 881 F.2d at 643. Each of Hu's claims, with the exception of Hu's two employment discrimination claims, clearly depends upon an interpretation of the collective bargaining agreement.[1]
 
 
 8
 Hu's claim that Hancock breached its collective bargaining agreement by firing her without "just cause" requires consideration of the terms of the agreement. The meaning of "just cause"--in this case, the provision permitting discharge for failure to meet certain minimum commission levels--must be determined by reference to the contract.
 
 
 9
 Hu's claim of breach of an implied agreement is also inextricably bound up with the terms of the labor contract and therefore preempted. "Because any independent agreement of employment ... could be effective only as part of the collective bargaining agreement, the CBA controls and the contract claim is preempted." Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir.1987) (concluding that § 301 preempted oral contract between employee and employer, where collective bargaining agreement could be construed as governing terms and conditions of employment) (internal quotations and citations omitted).
 
 
 10
 Section 301 also clearly preempts Hu's claim that Hancock breached the implied covenant of good faith and fair dealing. Hu alleges that this claim concerns "what actions Hancock took to deprive Hu of her benefits under the Contract, i.e., its refusal to properly allocate and tabulate her commissions so that she would be eligible for continued employment." Because this claim concerns Hancock's managerial actions, the scope of which is governed by the collective bargaining agreement, resolution of this claim necessarily would entail interpretation of the terms of the contract.
 
 
 11
 In addition, we have concluded that "[a] claim of breach of the implied covenant of good faith and fair dealing is preempted by section 301 when an employee has comparable job security under a collective bargaining agreement." Jackson, 881 F.2d at 644-45. In Jackson, the court concluded that because the contract permitted termination for cause only, job security was comparable to that provided by the state law covenant. See id. at 645. Here, as in Jackson, the collective bargaining agreement permits discharge for cause only.
 
 
 12
 In her fraud claim, Hu asserts that Hancock misrepresented the terms of her employment by stating that she would be fired only for just cause. Again, interpretation of the collective bargaining agreement's definition of just cause is central to an evaluation of the claim, and the claim is therefore preempted.
 
 
 13
 Hu's claims of intentional and negligent infliction of emotional distress are based on allegations that after she was fired, certain Hancock supervisors made comments and took actions that caused her severe distress. In her complaint, she alleged that Hancock terminated her "abruptly and without warning," and that in the process, a Hancock employee "humiliated Plaintiff and made fun of her loss of employment." Because the Hancock collective bargaining agreement contains provisions both setting forth Hancock's managerial rights and governing working conditions and practices, an assessment of Hu's claim would require interpretation of the contract. See Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1063 (9th Cir.1989) (holding that intentional infliction of emotional distress claim related to workplace conditions was preempted because collective bargaining agreement contained provisions regulating work conditions).
 
 
 14
 Hu's reliance on Tellez v. Pacific Gas & Elec. Co., 817 F.2d 536, 539 (9th Cir.) (holding that an employee's infliction of emotional distress claims were not preempted), cert. denied, 484 U.S. 908 (1987), is misplaced. The collective bargaining agreement in Tellez did not govern the behavior at issue, whereas in this case, the contract regulates workplace conditions, the very subject of Hu's claim. In addition, in Tellez the grievance mechanism established by the contract was not equipped to deal with the employee's allegation that the company had caused him distress in circulating his termination letter. Id. at 539. Here, by contrast, the collective bargaining agreement sets forth a grievance mechanism for "[a]ll grievances between the Marketing Representative and .. the Company." Because resolution of Hu's emotional distress claims requires interpretation of the Hancock collective bargaining agreement, and because the grievance mechanism established under the contract would have allowed Hu to air these claims, these claims are preempted as well. See Jackson, 881 F.2d at 645-46.
 
 
 15
 Finally, Hu's claim that Hancock denied the existence of agreement in bad faith also is preempted. The meaning of this claim is not entirely apparent. Hu seems to think that in firing her while claiming "just cause," Hancock has denied the existence of the collective bargaining agreement. Essentially, this is a disagreement about the meaning of "just cause" as defined by the agreement. A claim founded on such an interpretive dispute clearly is preempted.
 
 III. Exhaustion
 
 16
 Before bringing a lawsuit to resolve a contract dispute, an employee whose terms of employment are governed by a collective bargaining agreement must attempt to exhaust any grievance or arbitration remedies provided in the agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53 (1979); Jackson, 881 F.2d at 646. This requirement gives effect to the policies underlying the Labor Management Relations Act, which "expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant." Republic Steel, 379 U.S. at 653. An employee is released from the obligation to exhaust contractual remedies only if the agreement unambiguously provides that grievance procedures are not exclusive, id. at 657-59, or the union has breached its duty of fair representation. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 164 (1983).
 
 
 17
 It is undisputed that Hu did not file a grievance, and therefore that she did not meet the exhaustion requirement. Hu argues, however, that she need not exhaust her grievance/arbitration remedies because the procedure established in the Hancock agreement is not, by the terms of the agreement, exclusive. To support this argument, she points to language in the contract providing that the grievance/arbitration procedure "shall be in addition to, but not in limitation of, any other remedies, legal or equitable, otherwise available to either the Company or the Union."
 
 
 18
 The language on which Hu relies does not support her argument because it preserves additional remedies only for the company or the union, but not individual employees. In contrast, numerous other provisions of the contract refer specifically to the individual "Marketing Representative." The contract also provides that "[a]ll grievances between the Marketing Representative and/or the Union and the Company shall be disposed of in accordance with the following procedure" (emphasis added). In light of the fact that any ambiguity regarding the exclusivity of contractual grievance procedures must be resolved in favor of exclusivity, Republic Steel, 379 U.S. at 659, we conclude that the procedures here are exclusive.
 
 
 19
 Hu also argues that a triable issue of fact exists as to whether she was freed from the obligation of exhausting her grievance/arbitration remedies because the union breached its duty of fair representation. She admits that she did not ask the union to file a grievance. She alleges, however, that in requesting a lawyer, "due to her limited knowledge of English.... Hu asked the Union for help in the best way that she knew and the Union arbitrarily and in bad faith did nothing." She further contends that the union representative never informed her that she could file a grievance.
 
 
 20
 Even assuming the truth of Hu's allegations, Hu has not offered enough evidence to survive summary judgment on this issue. Hu bears the burden of proving that the union acted arbitrarily, discriminatorily, or in bad faith. Stevens v. Moore Business Forms, Inc., 18 F.3d 1443, 1447 (9th Cir.1994). The failure of a union to hire a lawyer for an employee does not amount to a breach of the duty of fair representation. See Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483 (9th Cir.1985). Furthermore, it is settled law that an employee has an affirmative obligation to be familiar with the grievance/arbitration procedures established under a collective bargaining agreement. See Evangelista v. Inlandboatmen's Union of the Pac., 777 F.2d 1390, 1397 (9th Cir.1985) ("Union members have a duty to become aware of the nature and availability of ... union remedies.").
 
 
 21
 Accordingly, we conclude Hu failed to exhaust her contractual remedies. We therefore need not reach the issue of whether the statute of limitations bars these claims.
 
 IV. Employment Discrimination
 
 22
 Hu avers that a genuine issue of material fact exists as to whether Hancock discriminated against her on the basis of sex and national origin in violation of California's Fair Employment and Housing Act. Cal.Gov't Code §§ 12940, 12948. Her claim of wrongful discrimination in violation of public policy is derivative of the employment discrimination claim; the public policy allegedly violated is the policy against discrimination.
 
 
 23
 Hu appears to have made out a prima facie case of discrimination. In a discriminatory discharge case such as this one, Hu can establish a prima facie case by demonstrating (1) that she was a member of a protected class; (2) that she was performing her job in a satisfactory manner; and (3) that she was replaced by someone with comparable skills. Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1075 (9th Cir.1986) (applying framework established under McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), in discriminatory discharge context).[2]
 
 
 24
 Although it is not in dispute that Hu has established the first and third elements of a prima facie case, she and Hancock disagree about whether she has satisfied the second element. Hu contends that she met her commission requirements and that she therefore was performing her job satisfactorily. To document this contention, she has submitted client cards recording the amount of each commission she claims to have received during the relevant period. Hancock disputes these figures, and has offered documentary evidence that conflicts with Hu's: namely a report on the status of each marketing representative indicating that Hu fell below the required commission levels. Hancock further argues, referring to the declaration of a Hancock manager, that Hu's client cards do not represent commissions actually paid because they do not account for "charge backs," instances in which clients returned their policies. However, because the "requisite degree of proof to establish a prima facie case is minimal," Messick v. Horizon Indus. Inc., 62 F.3d 1227, 1229 (9th Cir.1995) (articulating standard in age discrimination case),[3] Hu appears to have satisfied her burden. Her documentary evidence supports an inference that she was performing her work satisfactorily. See id.
 
 
 25
 Hu has not, however, provided enough evidence of discrimination to survive summary judgment. If an employer asserts a legitimate non-discriminatory reason for an employment decision, the plaintiff must produce "specific, substantial evidence of pretext." Wallis, 26 F.3d at 890 (internal quotations and citation omitted). Hancock's assertion that Hu failed to meet commission requirements clearly qualifies as a legitimate nondiscriminatory reason for her discharge.
 
 
 26
 Hu, in turn, has not established a genuine issue of material fact that Hancock's proffered reason is pretextual; she has not offered any evidence demonstrating that "discrimination was the real reason" for her discharge. Nidds v. Schindler Elevator Corp., No. 95-15090, 1996 WL 734053, at * 5 (9th Cir. Dec. 24, 1996). Hu has not provided any evidence that Hancock deviated from its standard policy in calculating her commissions, thereby singling her out for discriminatory treatment. For example, Hu has not shown that a similarly situated nonminority was retained by Hancock. Nor does Hu's anecdotal evidence of discriminatory motive--that Hancock neglected to invite her to the Christmas party, opened her mail, assigned her an unlucky phone extension, and allowed a Taiwanese marketing representative to take over her files while she visited China--create a triable issue of pretext. Again, Hu has failed to demonstrate that similarly situated nonminorities were treated differently. Accordingly, we affirm the district court's judgment on this claim.
 
 
 27
 Hu's claim of wrongful discharge in violation of public policy is wholly derivative of her employment discrimination claim. She cites to the same provisions of the FEHA under which she brings her primary discrimination claim as evidence of California's policy against discrimination. Accordingly, we affirm the district court's decision on this claim as well.
 
 CONCLUSION
 
 28
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Hancock does not argue that the employment discrimination claims are preempted under § 301. Because enforcement of state discrimination statutes does not require interpretation of provisions of collective bargaining agreements, such claims are not usually preempted. See, e.g., Jackson, 881 F.2d at 644
 
 
 [2]
 California courts rely on federal Title VII law to interpret analogous provisions of the FEHA. Mixon v. Fair Employment and Housing Comm'n, 192 Cal.App.3d 1306, 1316 (Cal.Ct.App.1987)
 
 
 [3]
 The "burdens of proof and persuasion are the same" in claims brought under Title VII and the Age Discrimination and Employment Act. Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994)