Charlotte KIRTON, Plaintiff,

v.

SUMMIT MEDICAL CENTER,
et al., Defendants.

No. C–97–1136 MEJ.

United States District Court,
N.D. California.

Aug. 29, 1997.

Scott Gilpin, Law Office of Scott Gilpin, Oakland, CA.

Mary Maloney Roberts, William L. Kasley, Carolann G. Hinkle, Corbett & Kane, Emeryville, CA.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION TO DISMISS

JAMES, United States Magistrate Judge.

Plaintiff's motion to remand and Defendants' motion to dismiss are presently before the Court. After careful consideration of the parties' moving papers, the arguments of counsel, and all matters presented, Plaintiff's motion to remand is DENIED and Defendants' motion to dismiss is GRANTED for the reasons set forth below. The clerk of the court is ordered to close the case.

## BACKGROUND

Plaintiff is employed by Defendants as a registered staff nurse. On September 15, 1995, Plaintiff's supervisor, Janet Thompson, discovered that Plaintiff had signed out portions of morphine sulfate but had failed to chart that any patient received the morphine sulfate. Soon thereafter, a co-employee made a complaint to Ms. Thompson alleging that Plaintiff had made a threatening telephone call to the co-employee for reporting the incident. Based on the uncharted morphine sulfate and the co-employee's complaint, Plaintiff was suspended for further investigation.

On September 25, 1995, Plaintiff received a notice of final warning and a three day suspension for negligence in the performance of assigned duties and for inappropriate conduct in dealing with another employee. After serving the three day suspension, Plaintiff was terminated, effective October 4, 1995. The basis for the termination is in dispute. Defendants claim that Plaintiff failed to contact her supervisor or to return to work after the three day suspension and was terminated for insubordination. Plaintiff claims that she did contact her supervisor but was unable to return to work due to stress.

Pursuant to the grievance procedure contained in the Collective Bargaining Agreement ("CBA") between Defendants and Plaintiff's union, the California Nurses Association (the "union"), the union filed grievances on Plaintiff's behalf regarding the discipline and termination. The CBA provides that Defendants "shall have the right to discharge or assess disciplinary action for just cause." (Robinson Dec., Ex. A, Articles 32.9.1). The CBA also provides a grievance procedure and an "Accelerated Arbitration Procedure" for "discharge, suspension and similar cases." (Robinson Dec., Ex. A, Articles 32.2–32.3.11).

On April 11, 1996, the grievances went to arbitration before Arbitrator John Kagel. Before the conclusion of arbitration, Defendants and the union reached an agreement to settle the grievances by reinstating Plaintiff's employment with back pay.

On September 13, 1996, Plaintiff filed a complaint in Alameda County Superior Court for wrongful termination based on false accusations of stealing narcotics. On April 2, 1997, Defendants removed the case to federal court based on original jurisdiction under section 301 of the Labor Management Relations Act, 1947, ("LMRA"), 29 U.S.C. section 185. On April 30, 1997, Plaintiff filed a motion to remand the case to state court. On June 23, 1997, Defendants filed a motion to

dismiss the case as preempted by section 301 of the LMRA.

Plaintiff's first amended complaint alleges five causes of action for defamation, wrongful discharge/breach of contract, unlawful harassment, intentional infliction of emotional distress and negligent infliction of emotional distress.

## LEGAL STANDARD

Plaintiff contends that her complaint does not facially invoke federal jurisdiction and, therefore, was improperly removed to federal court.

A suit may be removed to federal district court only if it could have been brought there originally. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). Absent diversity of citizenship, federal question jurisdiction is required. *Id.* The presence or absence of federal question jurisdiction that will support removal is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the complaint. *Id.* Ordinarily, a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. *Id.* at 393, 107 S.Ct. at 2430; *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–48, 77 L.Ed.2d 420 (1983).

Under the "complete preemption doctrine," however, once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law and is removable. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. "Controversies involving collective bargaining agreements constitute one such area." *Galvez v. Kuhn,* 933 F.2d 773, 776 (9th Cir.1991), citing *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Accordingly, the Court need only inquire whether Plaintiff's claims arise under section 301 of the LMRA, thus permitting removal to federal court, although Plaintiff seeks a remedy available under state law.

 Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Federal law under section 301 governs suits for breach of a CBA and displaces any state claim based on a CBA, as well as any state claim whose outcome depends on interpretation of the terms of a CBA. *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir.1987); *Miller v. AT & T Network Systems,* 850 F.2d 543, 545 (9th Cir.1988); *Cook v. Lindsay Olive Growers,* 911 F.2d 233, 237 (9th Cir.1990).

 It is not dispositive that a complaint is framed without reference to a CBA. *Allis–Chalmers Corp. v, Lueck,* 471 U.S. 202, 210–11, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985). Rather, state claims which require interpretation of a CBA, *Lingle,* 486 U.S. at 410, 108 S.Ct. at 1883, or is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," are preempted by section 301. *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912. Thus, even suits based on torts, rather than on breach of a CBA, are governed by federal law if their evaluation is "inextricably intertwined with consideration of the terms of [a] labor contract." *Id.*

 Section 301, however, does not preempt every claim concerning employment or tangentially involving a provision of a CBA. *Id. at* 211, 105 S.Ct. at 1911. If a court can uphold state rights without interpreting the terms of a CBA, the state claim is not necessarily preempted. *Id.* "[N]onnegotiable state-law rights . . . independent of any right established by contract" are not preempted. *Id.* at 213, 105 S.Ct. at 1912–13.

## LEGAL ANALYSIS

### Wrongful Discharge/Breach of Contract

 Plaintiff's second cause of action alleges that:

[p]laintiff's *Contract* with Defendant Summit Medical Center included covenants, oral and written, express and implied, to deal in good faith, to deal fairly, and to not terminate *the contract* without good cause. . . . Defendant breached *said contract* by terminating Plaintiff without good cause, in bad faith, and without conducting a fair opportunity to be heard. . . . Plaintiff faithfully and dutifully served Summit

Medical Center as a registered nurse, and performed all of her obligations under the *employment contract* competently and dependably.[1] (emphasis added).

(Pl.'s First Amend. Comp. ¶ 17–19).

 While Plaintiff's complaint alleges breach of a contract without specific reference to a CBA, Plaintiff is alleging breach of the CBA. During oral arguments, Plaintiff's counsel explicitly informed the Court that no other contract exists aside from the CBA. "[A] plaintiff covered by a collective bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective bargaining agreement." *Caterpillar,* 482 U.S. at 396, 107 S.Ct. at 2431–32 (emphasis in original).[2] Here, it is undisputed that the allegedly breached contract in Plaintiff's complaint is the CBA.

The CBA provides that Defendants "shall have the right to discharge or assess disciplinary action for just cause." (Robinson Dec., Ex. A, Articles 32.9.1). The CBA must be interpreted to determine whether Defendants breached the CBA by discharging Plaintiff without good cause, as explicitly alleged in Plaintiff's complaint.

Moreover, the CBA provides for a grievance and arbitration procedure for "discharge, suspension and similar cases." (Robinson Dec., Ex. A, Articles 32.2–32.3.11). While Plaintiff alleges that she was terminated without a fair opportunity to be heard, Plaintiff, in fact, relied on the CBA for redress. A grievance under the CBA was brought on Plaintiff's behalf, and during arbitration, an agreement was reached to reinstate Plaintiff. Clearly, the CBA must be interpreted to determine if Plaintiff was given a fair opportunity to be heard.

Section 301 governs claims for breach of a CBA. Plaintiff's claim for wrongful discharge/breach of contract is a claim for an alleged violation of the CBA and is, therefore, preempted by section 301 and dismissed.

### Intentional and Negligent Infliction of Emotional Distress

Plaintiff's fourth and fifth causes of action allege intentional and negligent infliction of emotional distress. Plaintiff alleges that:

Defendants performed the acts complained of herein in negligent and reckless disregard of Plaintiff's emotional well-being.... Defendants [also] engaged in the misconduct complained of herein with the intent to cause plaintiff severe emotional distress. The conduct was such as would cause an ordinary person to experience severe emotional distress, and Plaintiff in fact suffered severe emotional distress as a proximate result thereof.

(Pl.'s First Amend. Comp. ¶ 27, ¶ 31).

 Emotional distress claims are not preempted when they can be resolved with-

---

1. While Plaintiff's second cause of action is captioned as a "wrongful discharge/breach of contract" claim, Plaintiff's reply papers refer to "Plaintiff's second cause of action for breach of the covenant of good faith and fair dealing" and Plaintiff's complaint makes reference to oral and written covenants "to deal in good faith" and "to deal fairly." It is unclear whether Plaintiff is alleging claims for breach of the covenant of good faith and fair dealing in addition to the wrongful discharge/breach of contract claim. Assuming arguendo that Plaintiff does allege claims for breach of the implied covenant of good faith and fair dealing, the Court finds the claims preempted by section 301.

Claims for breach of the implied covenant of good faith and fair dealing are "designed to protect the job security of employees who at common law could be fired at will." *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1147 (9th Cir.1988), citing *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1373 n. 9 (9th Cir.1984). Section 301 preempts claims for the implied

covenant of good faith and fair dealing when an employee has comparable job security under the CBA. *Newberry,* 854 F.2d at 1147, quoting *Young,* 830 F.2d at 999; *Jackson v. Southern California Gas Co.,* 881 F.2d 638, 645 (9th Cir.1989). Here, the CBA permits discharge for just cause only and provides a grievance procedure to safeguard that right, which Plaintiff pursued. Plaintiff's "right to reinstatement at the grievance hearing was based directly on the terms of the CBA." *Cook,* 911 F.2d at 239; *see also Newberry,* 854 F.2d at 1147. The CBA provides comparable job security and a claim for breach of the implied covenant of good faith and fair dealing is also preempted by section 301.

2. The Court notes, however, that the existence of an individual employment contract does not necessarily bar preemption. Individual employment contract claims are preempted by section 301 where the subject matter of the individual contract is covered by the CBA and effective only as part of the CBA. *See Young,* 830 F.2d at 997–999.

out interpretation of the CBA. *Tellez v. Pacific Gas and Electric Co., Inc.,* 817 F.2d 536, 539 (9th Cir.1987). If the CBA does not govern the offending behavior, section 301 does not preempt emotional distress claims. *Miller,* 850 F.2d at 550 n. 5.

However, because emotional distress claims require inquiry into the appropriateness of a defendant's behavior the CBA can be relevant in determining whether a defendant's behavior was reasonable. *Miller,* 850 F.2d at 550; *Cook,* 911 F.2d at 239. Conduct that the CBA permits might be deemed reasonable because the CBA permits it or deemed unreasonable because the CBA prohibits it. *Miller,* 850 F.2d at 550.

 Under California law, for behavior to give rise to an emotional distress claim, conduct so extreme and outrageous "as to exceed all bounds of that usually tolerated in a civilized community" is required. *Cervantez v. J.C. Penney Co.,* 24 Cal.3d 579, 593, 156 Cal.Rptr. 198, 595 P.2d 975 (1979). Plaintiff's emotional distress claims arise from her allegations that Defendants falsely accused Plaintiff of stealing morphine and subsequently discharged Plaintiff on that basis. The CBA requires discipline and discharge for just cause only and provides a grievance procedure to ensure that the CBA provision for just cause is enforced. To determine whether Defendants' conduct is extreme and

outrageous, the Court must interpret the CBA provisions governing discipline and discharge for just cause and decide whether Defendants' decision to discharge Plaintiff and the basis for that decision were permitted or justified under the terms of the CBA. *See Newberry,* 854 F.2d at 1150. Unlike *Tellez,* where the CBA was silent on the conduct which gave rise to the emotional distress, the CBA in this case regulates the conduct of which Plaintiff complains.[3]

 Emotional distress claims are also preempted by section 301 when the claims arise out of a plaintiff's discharge and the defendant's conduct in the investigation leading up to the discharge. *Cook,* 911 F.2d at 240; *Newberry,* 854 F.2d at 1149; *Young,* 830 F.2d at 993; *Scott v. Machinists Automotive Trades Dist. Lodge,* 827 F.2d 589, 594 (9th Cir.1987); *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1475–76 (9th Cir. 1984). Plaintiff's claims of emotional distress stem directly from her allegations of wrongful discharge and Defendants' actions during the investigation leading to her suspension and discharge.

 Based on the above reasons, Plaintiff's emotional distress claims cannot be decided without interpreting or analyzing the terms of the CBA and is, thus, preempted by section 301 and dismissed.[4]

### Defamation

Plaintiff's first cause of action alleges that:

---

**3.** In *Tellez,* 817 F.2d at 539–40, a claim for intentional infliction of emotional distress was not preempted because it arose from the defendants' conduct not covered by the CBA. The plaintiff was suspended due to a report that the plaintiff had bought drugs at his place of employment. *Id.* at 537. After a grievance panel found that the plaintiff had been suspended without just cause and the suspension ordered expunged, the plaintiff sued his employer. *Id.* The plaintiff alleged that the employer caused him extreme emotional distress by distributing the suspension letter to eleven company managers. *Id.* The court found that the CBA was "silent on work conditions, and *vague* on disciplinary formalities." *Id.* at 539. Because the CBA neither required nor regulated suspension letters, interpretation of the CBA would have been irrelevant in deciding whether it was outrageous to circulate the letter. *Id.; see also Garibaldi,* 726 F.2d at 1369 n. 4 (emotional distress claim arising from the defendant's retaliation for plaintiff's report of spoiled milk to health authorities not

preempted because conduct not covered by the CBA).

**4.** The Workers' Compensation Act, California Labor Code section 3600, provides the sole and exclusive remedy for any injury sustained by an employee arising out of and in the course of his or her employment. The exclusive remedy provisions of the Workers' Compensation Act bar an employee's claims for intentional and negligent infliction of emotional distress "when the misconduct attributed to the employer are actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and friction in negotiation as to grievances." *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 160, 233 Cal. Rptr. 308, 729 P.2d 743 (1987).

Conduct such as improper disciplinary hearings and false accusations of dishonesty, *Cole,* 43 Cal.3d at 160, 233 Cal.Rptr. 308, 729 P.2d 743, and disciplinary actions and discharge motivated by intent to harass, *Shoemaker v. Myers,* 52

Defendant Janet Thompson and other persons employed by Defendant Summit Medical Center, in the course and scope of such employment, falsely accused Plaintiff, orally and in writing of, inter alia, stealing morphine ... [and] published these statements to others ... Defendant Summit Medical Center also knew that the allegations were false, and ratified the statements by wrongfully discharging Plaintiff from her employment.

(Pl.'s First Amend. Comp. ¶ 9, ¶ 11, ¶ 12).

In *Tellez*, 817 F.2d 536–38, the court held that the plaintiff's defamation claim was not preempted by section 301 because the CBA did not govern the defendant's defamatory conduct. *Id.* at 538. The plaintiff's defamation claim arose from the distribution of a suspension letter accusing the plaintiff of buying drugs on the job. *Id.* The court found that the CBA did not govern the defendant's allegedly defamatory conduct because the CBA was silent concerning suspension letters and, therefore, the defendant could not have been acting under the CBA when distributing the letter. *Id.*

> This claim neither asserts rights deriving from the collective bargaining agreement, nor requires interpretation of the agreement's terms. California's defamation law established nonnegotiable rights and obligations independent of any labor contract. One can sue for defamation regardless of employment status or union membership.

*Id.*

In *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057 (9th Cir.1989), the determination

of whether a defamation claim was preempted was, again, based on whether the CBA governed the defamatory conduct. The plaintiffs filed a claim for defamation after they were discharged for destruction of company property and harassment of other workers. *Id.* at 1059. The defamation claim was based on the discharge notices which contained the reasons for the discharge. *Id.* at 1063. The court found the defamation claim preempted since the CBA specifically requires the employer to notify the employee and the union of intended disciplinary actions in writing, stating the charges against the employee. *Id.* The court distinguished *Shane* from *Tellez* by stating that, unlike the *Shane* CBA, the *Tellez* CBA did not require the written notification or circulation of suspension letters. *Id.*

Citing *Tellez*, the court in *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 645 (9th Cir.1989), found the defamation claim preempted because the defamatory statements did not appear to have been made pursuant to any requirements of the disciplinary procedures set forth in the CBA. In *Jackson*, accusations of embezzlement, sexual harassment, and poor work performance by other employees formed the basis of the plaintiff's defamation claim. *Id.*

However, in *Scott v. Machinists Automotive Trades D. Lodge*, 827 F.2d 589, 594 (9th Cir.1987), a case decided by the Ninth Circuit after its *Tellez* decision, the court found the defamation claim preempted since the allegedly defamatory statements "arise from the same facts which support his section 301 action [and] were made in the course of a

---

Cal.3d 1, 25, 276 Cal.Rptr. 303, 801 P.2d 1054 (1990), do not exceed the normal risks of the employment relationship and fall within the Workers' Compensation Act. Conduct which may be characterized as "intentional, unfair or outrageous" is nevertheless covered by the workers' compensation exclusivity provisions. *Shoemaker*, 52 Cal.3d at 25, 276 Cal.Rptr. 303, 801 P.2d 1054.

However, emotional distress claims are not preempted by the Workers' Compensation Act where the alleged wrongful discharge violates fundamental public policy. *Gantt v. Sentry Insurance*, 1 Cal.4th 1083, 1097–1101, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992). Allegations of employer misconduct involving sexual or racial harassment or discrimination are actionable in

tort notwithstanding the broad workers' compensation preemption. *Id.* at 1101, 4 Cal.Rptr.2d 874, 824 P.2d 680.

Here, unlike the *Gantt* case, Plaintiff fails to allege any facts which can be characterized as violations of fundamental public policy. Plaintiff's emotional distress claims arise from allegations concerning wrongful discipline and discharge. The facts alleged are precisely the kind held part of the normal risks of the employment relationship in *Cole* and *Shoemaker*. Plaintiff's emotional distress claims do not qualify for the exception to the worker's compensation exclusivity identified in *Gantt*. Thus, Plaintiff's emotional distress claims must also be dismissed based on preemption by the Workers' Compensation Act.

counseling session and the prearbitration meetings and investigative hearings" and, thus, "cannot be evaluated apart from the grievance procedure provided by the contract."

 Here, like *Scott,* any defamatory statements were made after the initial report of the uncharted morphine sulfate and at some point during the subsequent investigation. Unlike *Tellez* and *Jackson,* Plaintiff's defamation claim arises from the same facts which form the basis of her section 301 breach of contract claim and is preempted by section 301. *See Scott,* 827 F.2d 589, 594. In *Tellez,* after the defendant accused the plaintiff of buying drugs on the job, the defendant circulated the suspension letter which contained the accusation to eleven other mangers. The defamation claim was based on the circulated letters, not the accusation itself that the plaintiff was buying drugs. Similarly, in *Jackson,* accusations of embezzlement, harassment and poor work performance by other employees which formed the basis of the plaintiff's defamation claim, were not the basis of the plaintiff's section 301 action. The plaintiff's claims of constructive discharge and breach of contract in *Jackson* were based on allegations of racial discrimination not as a result of defamatory conduct. In this case, Plaintiff's defamation claim based on false accusations that she stole morphine is the basis of Plaintiff's section 301 breach of contract claim.

Additionally, in direct contrast to *Tellez* and *Jackson,* the CBA in this case governs Defendants' allegedly defamatory conduct. Plaintiff contends that Defendants falsely accused her of stealing morphine and discharged her on that basis. The CBA contains provisions requiring discharge for just cause. The CBA must be interpreted to determine whether accusations that Plaintiff stole narcotics and the basis for those accusations amounts to just cause discharge under the CBA.

Thus, because Plaintiff's defamation claim arises from the same facts which form the basis of her section 301 breach of contract claim and the CBA governs the allegedly defamatory conduct, Plaintiff's defamation claim is preempted by section 301 and dismissed.

### Unlawful Harassment

Plaintiff's third cause of action alleges that Plaintiff's supervisor, Ms. Thompson,

> conducted a pattern and practice of unlawful on-the-job harassment of Plaintiff, in violation of California Government Code Section 12940 ... Defendant Summit Medical Center ratified the misconduct of Thompson and others by discharging Plaintiff, rather than disciplining Defendant Thompson and others for their pattern and practice of harassment.

(Pl.'s First Amend. Comp. ¶ 22–23).

 Plaintiff bases her harassment claim on California Government Code section 12940. California Government Code section 12940 is not preempted by section 301. *See Cook,* 911 F.2d at 240. The Court's dismissal of the section 301 claims, however, does not deprive it of jurisdiction over remaining supplemental state law claims. *See Bale v. General Telephone Co. of California,* 795 F.2d 775, 778 (9th Cir.1986). The Court can properly exercise supplemental jurisdiction over a state law claim if judicial economy, convenience, fairness, and comity permits it. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).

The Court perceives no unfairness to the litigants in addressing Plaintiff's state law harassment claim. Plaintiff's state law claim does not involve a novel or complex issue of state law and arises out of the same facts as Plaintiff's section 301 claim. Moreover, the question of whether the claim should be dismissed has been fully briefed by the parties and considered by the Court. In light of the above factors and the economy and convenience of having all claims in this case determined by the Court at this time, the Court declines to remand Plaintiff's state law harassment claim.

 In addition to prohibiting discrimination, subdivision (h) of the California Government Code section 12940 prohibits harassment on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age. Cal. Govt. Code section 12940(h). The public policy underly-

ing section 12940 is to prohibit harassment and discrimination in employment on the basis of any protected classification. *Matthews v. Superior Court*, 34 Cal.App.4th 598, 602, 40 Cal.Rptr.2d 350 (1995).

 Plaintiff's complaint and moving papers are devoid of any factual allegations charging Defendants of harassment based on Plaintiff's membership in a protected class. Instead, Plaintiff's allegations that she was falsely accused of stealing morphine and the subsequent harassment on that ground is the basis of Plaintiff's harassment claim.[5] Plaintiff's harassment claim under California Government Code section 12940 fails to state a valid claim for relief and is, therefore, dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims for wrongful discharge/breach of contract, the intentional and negligent infliction of emotional distress and defamation are hereby dismissed as preempted by section 301 of the LMRA. Plaintiff's harassment claim under California Government Code section 12940 is hereby dismissed for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

---

**5.** Plaintiff also fails to establish that she has exhausted her administrative remedies before bringing suit under California Government Code section 12940. To proceed with her claim, exhaustion of administrative remedies must appear on the face of the complaint.