**Julia LAPPIN, Plaintiff,**

v.

**LAIDLAW TRANSIT INC., et al., Defendants.**

**No. C 00–2823 SI.**

United States District Court, N.D. California.

Dec. 18, 2001.

James J. Braze, Gail Stimmell Braze, David Ng, Braze Law Offices, Petaluma, CA, for plaintiff.

Jeffrey L. Adams, Jill A. Fukunaga, Littler Mendelson, Walnut Creek, CA, Richard A. Frankel, Michelle R. Ferber, Frankel & Goldware, Danvil, CA, Frederick L. Nelson, Hildebrand, McLeod & Nelson, Oakland, CA, Kevin C. Brodar, Associate General Counsel, Cleveland, OH, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ILLSTON, District Judge.

On December 14, 2001, the Court heard argument on defendants' motion for summary judgment. Having carefully considered the arguments of the parties and the papers submitted, the Court hereby GRANTS defendants' motion for the reasons set forth below.

## BACKGROUND

Plaintiff Julia Lappin ("Lappin") was employed as a bus driver by defendant Laidlaw Transit, Inc. ("Laidlaw"), between November 1997 and October 1999. Laidlaw provides bus transportation services for children in the City and County of San Francisco. Declaration of Robert Gonzalez, 2:5–6. During her employment at Laidlaw, Lappin was a member of the United Transportation Union Local 1741 ("UTU"), and was subject to the collective bargaining agreement between Laidlaw and UTU. Complaint, ¶¶ 13, 15. Defendants Donald Brown ("Brown") and Donald Choy ("Choy") were co-workers of Lappin, also employed as bus drivers, and were members of UTU during all relevant times. Lappin socialized on a regular basis with Brown and Choy, as well as other co-workers. Deposition of Julia Lappin, 332:8–333:3.

This suit is based in large part on an altercation between Lappin and Brown that occurred on October 1, 1999. On that date, Lappin encountered Brown in the dispatch office after driving her morning bus route. Lappin got a cup of coffee, at which point Brown asked her why she was drinking the coffee he had made. *Id.* at 115:7–116:22; 124:1–12. The two then became involved in a physical altercation. The parties dispute the details and seriousness of the altercation. According to Lappin, Brown approached her from behind and hit her on the back of the head. She turned around and tried to kick him, but he grabbed her and pushed her, causing her to fall on two co-workers. *Id.* at 121:4–5. Brown then approached Lappin and she hit him on the side of the head. Brown grabbed her and "threw her" approximately five or six feet. *Id.* at 128:7–129:5. Lappin was propelled into an object she believes to have been a wall or table, and then fell to the ground. *Id.* at 131:5–17. Two co-workers came to Lappin's assistance and another took Brown out of the room. *Id.* at 131:16–19.

Later in the day, as Lappin prepared to drive her afternoon route, she saw defendant Choy and told him about the altercation with Brown. According to Lappin, Choy reacted by laughing and tapping her on the head, apparently mimicking Brown's earlier act. *Id.* at 144:16–18. Lappin then parked her bus, told dispatch that she could not drive, and went home. *Id.* at 148:2–3.

On October 4, 1999, the following Monday, Lappin went to work and drove her morning route. When her route was completed, she returned to the dispatch office and spoke with Susan Moorehead, who was a fellow driver at Laidlaw and also the

president of UTU, about the altercation with Brown. According to Lappin, Moorehead discouraged her from reporting the incident to management because she thought that Brown was "just going to make it a racial issue and that we should just kind of work it out among ourselves." *Id.* at 154:12–16. After two other co-workers encouraged her to report the matter to management, Lappin filled out an incident report and provided it to the District Manager for Laidlaw Transit, Inc., Robert Gonzalez. *Id.* at 133:13–19.

Gonzalez began an investigation of the incident soon afterwards. He interviewed several employees who had witnessed the incident and convened a meeting on October 15, 1999 between the parties. Gonzalez Decl., 2:13–16. Present at the meeting were Brown, Lappin, Gonzalez, Moorehead, and the Area General Manager, Barbara Perry. Both Brown and Lappin provided their differing versions of the incident. The company apparently concluded that the incident stemmed from horseplay between Brown and Lappin. *Id.* at 351:15–18. Laidlaw sent a letter to Lappin on November 1, 1999 summarizing the findings of the investigation. In essence, Laidlaw concluded that the incident "occurred because *both* of you behaved inappropriately, which caused the incident to get out of hand." Lappin Depo., Ex. 22 ("Letter of Understanding") (emphasis in original). The company determined that Lappin and Brown had engaged in "friendly verbal bantering and even occasional horseplay" in the past. Brown's act of striking Lappin on the back of the head, according to Laidlaw, was "the usual horseplay in which you and he had previously engaged." Instead of retaliating, Lappin should have reported the incident to supervisors. *Id.* According to Laidlaw,

Brown received a similar letter. Defs.' Mot, 6:28–7:1.

After filing the incident report on October 4, 1999, Lappin did not return to work at Laidlaw. Lappin Depo., 463:19–21. On October 27, 1999 Lappin submitted a resignation letter. On November 1, 1999, Gonzalez sent a letter to Lappin in response in which he recognized Lappin's concern for her safety and assured her that he believed that she could safely return to work at Laidlaw. He encouraged her to reconsider, advising her that the resignation could be reversed, allowing her to return to work at the same level of seniority. In response to her concerns that Brown had not been appropriately disciplined, Gonzalez reported that "the matter had been properly addressed with Donald, and he clearly understands the consequences of a repeated infraction." Lappin Depo., Ex. 23 ("Gonzalez 11/1/99 Letter"). Lappin did not respond to the letter. She commenced a new job at Marin Country Day School on November 1, 1999. *Id.* at 511:12–15.

Lappin filed the instant suit on August 8, 2000 alleging several causes of action against Laidlaw, Brown, and Choy. The claims are as follows: (1) Title VII race discrimination (against Laidlaw and Brown); (2) Title VII sex discrimination (against Laidlaw and Brown); (3) sexual harassment based on hostile work environment (against Laidlaw and Brown); (4) battery (against Laidlaw, Brown, and Choy); (5) breach of contract (against Laidlaw); (6) breach of the covenant of good faith and fair dealing (against Laidlaw); (7) violation of California Constitution Article I, Section 8 (against Laidlaw, Brown, and Choy); and (8) intentional infliction of emotional distress (against Laidlaw, Brown, and Choy).[1] All three defen-

---

**1.** Lappin also included a claim for denial of fair representation against UTU. Lappin has

dants now move for summary judgment on each claim.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325, 106 S.Ct. at 2554.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252, 106 S.Ct. 2505, 2519, 91 L.Ed.2d 202 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

## DISCUSSION

### 1. Title VII Race and Sex Discrimination (Claims 1 and 2)

■ Lappin's first and second causes of action are for race and sex discrimination against Brown and Laidlaw under Title VII, 42 U.S.C. § 2000e–2(a).[2] In her complaint, Lappin claims that Laidlaw constructively terminated her from her position by failing to provide a safe place to work. Lappin explains that "[d]efendant Laidlaw apparently was more concerned with appeasing Defendant Brown who is a black male as opposed to Plaintiff who is a Chinese female." Complaint, ¶ 59. In addition, Lappin claims that Laidlaw permitted an employment environment that was hostile to her race and gender because Laidlaw permitted racial slurs and sexual jokes and comments on the job. This conduct, according to Lappin, amounted to discrimination on the basis of her race and gender. *Id.* at ¶¶ 53–60.

The burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817,

---

since settled her claim against the union.

**2.** Lappin asserted the Title VII claims against Brown individually. Individual employees may not be held personally liable under Title

VII. *See Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir.1993). Therefore, Brown is entitled to judgment as a matter of law on Causes of Action 1, 2, and 3.

36 L.Ed.2d 668 (1973), governs Lappin's claims of race and sex discrimination. That process requires the plaintiff to initially establish a *prima facie* case of discrimination. Generally, Lappin is required to show that (1) she belongs to a protected class; (2) she was subjected to an adverse employment action by her employer; and (3) others who were similarly situated and not within her protected class were treated more favorably than she was. *See Id.* at 802, 93 S.Ct. 1817. Establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the plaintiff has established a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The defendant must produce admissible evidence of the reasons for plaintiff's rejection sufficient to create a genuine issue of fact as to whether it discriminated against plaintiff. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The defendant must submit evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for its actions. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant does so, the presumption raised by the *prima facie* case is rebutted and disappears. *Burdine,* 450 U.S. at 255, 101 S.Ct. 1089.

■ Lappin fails to establish a prima facie case of race or sex discrimination under Title VII because she has put forth little, if any, evidence to support a presumption of discrimination. In an effort to prove that others similarly situated to her but not within her class were treated more favorably than she was, Lappin claims that black employees were given preference over Asians. Specifically, Lappin claims that she was denied assignments that should have been based on seniority, but were instead given to employees of less seniority. Lappin Depo., 49:21–50:6. The only evidence of this denial of assignments is Lappin's deposition testimony in which she claimed that she did not receive extra work during a golf tournament in 1999. Lappin explained during her deposition: "It went to people with lower rank than I did and I wanted it but I didn't get it because at that time my seniority wasn't high enough, but yet I seen somebody else lower than myself getting the job." *Id.* at 54:35–55:10. Lappin presents no evidence to substantiate this claim. For example, it is not clear what race or gender the individuals who were allegedly given extra work were. When specifically asked whether she thought she was denied work based on her gender, Lappin responded that she did not recall. *Id.* at 342:16–19. Lappin fails to provide any evidence, beyond vague statements in her deposition, to establish a prima facie case of discrimination.[3] Her Title VII claims fail as a result. Defendants are therefore entitled to judgment as a matter of law on Lappin's First and Second Causes of Action, for

3. The Court notes that plaintiff's opposition pleading does not appear to have been proofread. For example, one line of the opposition, in the section addressing the Title VII claims, reads: "Gail check other witness statements." Pl.'s Opp'n, 10:4. At another point in the brief, there is a blank space where it appears that deposition page numbers were to be inserted to support the contention that fellow employees of Brown and Choy were hostile to Lappin. *Id.* at 11:15–17. Further, though counsel for plaintiff cites to pages 553 and 554 of Lappin's deposition in the opposition brief, neither page was provided to the Court. *Id.* at 2:19–20. Again, though there is a reference to page 16 of Diana Sanchez's deposition in the opposition brief, that page was not provided to the Court.

employment discrimination under Title VII.

## 2. Sexual Harassment (Claim 3)

Lappin's third cause of action is a claim for hostile work environment sexual harassment.[4] The Court must first determine whether Lappin has established that she was subject to a hostile work environment. If so, the Court turns to the question of whether the employer may be held liable. *See Little v. Windermere Relocation, Inc.*, 265 F.3d 903, 907 (9th Cir.2001).

### a. Existence of a Sexual Harassment Hostile Work Environment

 "An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir.1999). Whether an environment is sufficiently hostile or abusive must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher v. Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Only harassing conduct that is

"severe or pervasive" can produce a "constructive alteratio[n] in the terms or conditions of employment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275. The workplace must be permeated with discriminatory intimidation. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir.2000).

 Lappin points to a number of instances of alleged sexual harassment in her deposition testimony. She claims that Brown "makes little comments and—comments on what I wear." Lappin Depo., 80:24–25. When asked for more detailed information about Brown's behavior, Lappin answered: "Well, it's just about, you know, the way I looked or me wearing shorts." *Id.* at 83:21–22. On occasion, Brown told her that she had "nice legs." *Id.* at 518:1–12. She also remembers Brown calling her either "tiny butt" or "tight ass." *Id.* at 84:15–19. She claims that Brown used "the F word" and the word "bitch" in reference to her on "probably several occasions." *Id.* at 89:17–90:3. The single occasion she specifically remembers him using the word "bitch" is October 1, the date of their altercation. She also claims that Brown once stuck out his tongue and wiggled it around at her. *Id.* at 519:8–23.

Lappin recalls Choy saying "[s]omething about getting a blow job from Mary or something." *Id.* at 527:20–24. This comment was not directed at Lappin, but it

---

**4.** Though she does not state a legal basis for the claim, the Court assumes that the claim is brought under Title VII. Laidlaw assumed as much in its motion for summary judgment, and Lappin has not argued otherwise.

Brown was named as an individual defendant for this cause of action. As explained above, individual employees may not be held personally liable under Title VII.

was said loud enough for her to hear it, and she interpreted it to be sexual harassment. Lappin also reports that Choy once stared at her while "raising his eyebrows and puckering his lips." *Id.* at 546:1–4. Choy also referred to the anatomies of other co-workers. *Id.* at 530:5–8.

Given the relatively strict standard applied by courts evaluating claims of sexual harassment, the Court finds that Lappin's allegations do not appear to establish conduct that was "sufficiently severe or pervasive as to alter the conditions of [her] employment and create an abusive work environment." *Pavon,* 192 F.3d at 908. Nevertheless, the Court need not determine whether Lappin has established that she was subject to a hostile work environment given its conclusion, discussed below, that Laidlaw can not be held liable for the alleged harassment.

### b. Laidlaw's Culpability for Alleged Hostile Work Environment

 Even were the Court to assume that Lappin had presented a triable issue of material fact as to whether she was subjected to a hostile work environment, it is clear that Laidlaw could not be held liable for any alleged harassment. An employer may be held vicariously liable for a co-worker's sexual harassment if the employer knew or should have known of the harassment but did not take adequate steps to address it. *See Swinton v. Potomac Corp.,* 270 F.3d 794, 803 (9th Cir. 2001). "Once an employer knows or should know of [co-worker] harassment, a remedial obligation kicks in." *Fuller v. City of Oakland,* 47 F.3d 1522, 1528 (9th Cir.1995). Employers are held liable for

harassing conduct by co-workers unless "the employer ... take[s] adequate remedial measures in order to avoid liability." *Yamaguchi v. United States Dep't of the Air Force,* 109 F.3d 1475, 1482 (9th Cir. 1997). Remedies for sexual harassment should be reasonably calculated to end the harassment. *Ellison v. Brady,* 924 F.2d 872, 882 (9th Cir.1991). The reasonableness of the remedy depends on its ability to (1) "stop harassment by the person who engaged in harassment;" and (2) "persuade potential harassers to refrain from unlawful conduct." *Id.* at 882.

 Here, Lappin never reported the alleged instances of sexual harassment described above. She failed to do so despite the fact that Laidlaw had an established sexual harassment policy in place which was provided to her on at least two occasions. Lappin Depo., Exs. 10–13. The harassment policy included a complaint procedure that provided for several avenues for employees to report harassment, including contacting a supervisor, the supervisor's manager, the department manager or director, or calling an 800 number to reach the human resources department. Lappin Depo., Ex. 10. At her deposition, Lappin affirmed that Laidlaw had provided her with an explanation of the complaint process if she were harassed and that she was familiar with the grievance procedure outlined in the CBA. *Id.* at 104:8–22. Lappin did report the October 1 incident, but she did not then, nor does she now, represent that the incident was sexual in nature.[5] Moreover, in her Charge of Discrimination filed with the EEOC, Lappin indicated that the earliest and most

---

5. In her opposition pleadings, Lappin claims that she was discouraged from reporting the October 1 incident by Susan Moorehead, a union representative. Assuming this to be true, it does not alter the result. First, Moorehead was a co-worker, not a supervisor. Second, Lappin did, in fact, report that incident despite Moorehead's warnings. Finally, Lappin does not claim that Moorehead or any other person at Laidlaw discouraged her from reporting any alleged sexual harassment.

recent act of alleged discrimination took place on October 1, 1999, neglecting to mention any of the sexual harassment described in her deposition. Adams Decl., Ex. 14.

Lappin has presented no evidence to support a conclusion that Lappin was negligent in failing to recognize or act upon the alleged harassment. In response to her report of the October 1 incident—the only time Laidlaw was made aware of Lappin's concerns—Laidlaw initiated an investigation that involved interviews of all witnesses and a meeting of the parties involved. The result of the investigation was a warning to both Lappin and Brown. This was an appropriate response under the circumstances. Defendants are therefore entitled to judgment as a matter of law on Lappin's Third Cause of Action, for sexual harassment.

### 3. Contract Claims (Claims 5 and 6)

Lappin's claims of breach of contract and breach of the covenant of good faith and fair dealing necessarily fail because she has not established the existence of an employment contract. In the absence of an express contract with Laidlaw, Lappin bases her contract claims on the existence of an implied contract between the parties.

■ An implied-in-fact employment contract may arise based on longevity of service, exemplary service, lack of criticism of the employee's performance, assurances by the employer, and the employer's acknowledged policies and practices. *See Pugh v. See's Candies, Inc.*, 116 Cal. App.3d 311, 327, 171 Cal.Rptr. 917 (1981), overruled on other grounds *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 100 Cal. Rptr.2d 352, 8 P.3d 1089 (2000). "The totality of the circumstances" must be examined to determine whether the parties' conduct, considered in the context of surrounding circumstances, gave rise to an implied-in-fact contract limiting the employer's termination rights. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 681, 254 Cal.Rptr. 211, 765 P.2d 373 (1988).

■ Lappin has not presented facts that could lead to a conclusion that an implied contract existed between the parties. The complaint states that the existence of an implied contract is evidenced by "Defendant's written personnel policies and discipline procedures." Complaint, ¶ 80. At the summary judgment stage, however, the sole evidence to which Lappin points is her October 27, 1999 letter of resignation to Laidlaw and Gonzalez's November 1, 1999 letter in response. Lappin fails to explain how the wording of either letter, both of which relate to the October 1 incident, provides evidence of the existence of an implied contract. Moreover, in her deposition, Lappin admitted that her employee handbook explicitly stated that it was not intended to constitute an employment contract. When asked, she was also unable to point to any other document or representation by persons at Laidlaw that indicated that an employment contract existed. Lappin Depo., 41:20–43:11.

■ Therefore, Lappin's breach of contract claim cannot be sustained. *See Guz*, 24 Cal.4th at 366, 100 Cal.Rptr.2d 352, 8 P.3d 1089 ("where the undisputed facts negate the existence or the breach of the contract claimed, summary judgment is proper"). Furthermore, the covenant of good faith and fair dealing cannot impose substantive terms and conditions beyond those to which the contract parties actually agreed. *Id.* at 349–50, 100 Cal.Rptr.2d 352, 8 P.3d 1089. As a result, because Lappin had no implied employment contract with Laidlaw, she also cannot sustain her Sixth Cause of Action, for breach of the covenant of good faith and fair dealing.

As an alternative ground for summary judgment, the two contract claims are preempted by Section 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a). Because Lappin was a union member, her employment was governed by the collective bargaining agreement ("CBA") in place during her employment at Laidlaw. Complaint, ¶ 15.

■ Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." *Id.* The Supreme Court has held that the LMRA preempts state law causes of action that ·are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The Ninth Circuit has also found that state law claims that are "inextricably intertwined with consideration of the terms of the CBA" are preempted. *Miller v. AT & T Network Sys.,* 850 F.2d 543, 550 (9th Cir.1988); *Evangelista v. Inlandboatmen's Union of Pacific,* 777 F.2d 1390, 1401 (9th Cir.1985). Since Lappin's contract claims concern a job that was governed by the collective bargaining agreement, the claims are completely preempted by Section 301. *See Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d at 997–999 (1987).

■ For the same reasons, Lappin's state law claim for breach of the implied covenant of good faith and fair dealing is preempted. This covenant "derives from the contract [and] is defined by the contractual obligation of good faith," and therefore is preempted to the same extent the breach of contract claim is. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 218, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *see also Young,* 830 F.2d at 999–1000. Defendants are therefore entitled to judg-

ment as a matter of law as to Lappin's Fifth and Sixth Cause of Action, for breach of contract and breach of the covenant of good faith and fair dealing.

### 4. Battery (Claim 4)

Lappin's battery claim was stated against all three defendants. Defendants contend that Lappin's battery claims are barred by workers' compensation exclusivity provisions. Under California Labor Code § 3600, workers' compensation liability, "in lieu of any other liability whatsoever" will exist "against an employer for any injury sustained by his or her employees arising out of and in the course of employment." Section 3602 provides that "[w]here the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is ... the sole and exclusive remedy of the employee or his or her dependents against the employer...." Cal. Lab.Code § 3602(a).

#### a. Battery Claim against Laidlaw

■ Lappin asserts a battery claim against Laidlaw, apparently based on a theory of respondeat superior. The complaint makes clear that the battery claim is based entirely upon Brown and Choy's acts on October 1, 1999. The complaint then alleges that Brown and Choy were the agents or employees of Laidlaw and were acting within the purpose and scope of such agency or employment. Their acts, according to Lappin, were foreseeable to Laidlaw. Complaint, ¶ 73. The doctrine of respondeat superior may not be used to avoid workers' compensation exclusivity in cases involving assaults by co-employees. *See Fretland v. County of Humboldt,* 69 Cal.App.4th 1478, 1486, 82 Cal.Rptr.2d 359 (1999); *Iverson v. Atlas Pacific Engineering,* 143 Cal.App.3d 219, 191 Cal.Rptr. 696 (1983). Section 3601(b) states: "In no event, either by legal action or by agreement... shall the employer be

held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee under paragraph (1) or (2) of subdivision (a)." Cal. Lab.Code 3601(b).

■ Vicarious liability may be imposed on an employer when the employer engaged in "positive misconduct," including ratification of the tortious conduct of the employee. *See Iverson,* 143 Cal.App.3d at 228, 191 Cal.Rptr. 696. However, in this case the evidence shows that Laidlaw almost immediately commenced an investigation following the October 1 incident and produced letters to both Brown and Lappin about its findings. Lappin has presented no evidence to support a finding that Laidlaw ratified the acts of the employees. Laidlaw is therefore entitled to judgment as a matter of law on Lappin's Fourth Cause of Action for battery.[6]

### b. Battery Claim Against Choy

Defendants further contend that the battery claims against Brown and Choy are based upon alleged acts that were within the scope of their employment, and are consequently within the scope of the exclusivity provisions of the Workers' Compensation Act. Labor Code § 3601(a) prohibits suits against co-workers acting within the scope of their employment, unless the "injury or death is proximately caused by the willful and unprovoked physical act of aggression of the other employee." Cal. Lab.Code 3601(a)(1). The California Supreme Court recently clarified the meaning of this exception, holding that "unprovoked physical act of aggression" includes an intent to injure requirement. *Torres v. Parkhouse Tire Service, Inc.,* 26 Cal.4th 995, 1006, 111

Cal.Rptr.2d 564, 30 P.3d 57 (2001). The court distinguished "unprovoked physical acts of aggression" from "horseplay," which would likely be covered by workers' compensation. *Id.* at 1007, 111 Cal. Rptr.2d 564, 30 P.3d 57.

■ Lappin's battery claim against Choy appears to be based on the incident that occurred in the driveway following the altercation with Brown. The battery claim is barred by workers' compensation exclusivity. Lappin has not presented evidence to support a conclusion that Choy entertained a desire to injure her. Lappin claims that after she told him about the earlier incident, he "he just kind of smirked and laughed about it and hit me." Lappin Depo., 145:14–15. Choy hit Lappin on the back of the head, "doing what Donald Brown did but in a lighter version." *Id.* at 146:9–10. She explained that "he was making fun of the whole issue I guess." *Id.* at 146:15–16. Lappin revealed during her deposition that her interactions with co-workers at Laidlaw at times involved "playful tapping." This apparently involved reciprocal acts, in which one party would "tap" the other, and the other would "give a friendly tap back." *Id.* at 72:8–16. Lappin has not presented any evidence that Choy intended to injure her when he hit her and the act is consistent with prior "horseplay" engaged in by the parties. Therefore, the battery claim against Choy is barred by workers' compensation exclusivity and Choy is entitled to judgment as a matter of law on Lappin's Fourth Cause of Action, for battery.[7]

### c. Battery Claim Against Brown

■ However, it is not clear based on the evidence presented that Lappin's bat-

**6.** Because the Court finds that the intentional infliction of emotional distress claim against Laidlaw is preempted by Section 301 of the LMRA, it does not address defendants' contention that the claim is also barred by workers' compensation exclusivity.

**7.** Choy was also a named defendant to Lappin's intentional infliction of emotional distress claim. The same logic applies to bar that claim, though it fails for independent reasons as well.

tery claim against Brown would be barred by workers' compensation exclusivity. Lappin has presented evidence that could allow a trier of fact to infer an intent to injure on the part of Brown. Lappin recalls that Brown came from behind her and hit her "very hard" on the back of the head. Lappin Depo., 118:7–8. During the altercation, Brown was upset and called Lappin a "bitch." Declaration of Vidal Duran, 15:10–11. She turned around and tried to knee him, at which point he pushed her and she fell onto the lap of a co-worker. She moved towards him and he pushed her back about six or seven feet into a table or wall. Duran Depo., 9:12–11:3. A co-worker, Diana Sanchez, remembers Lappin's head hitting a wall after Brown pushed her the second time. Declaration of Diana Sanchez, 19:5–8. Lappin claims that both of her feet were off the ground when Brown pushed her. Lappin Depo., 563:24–25. Another Laidlaw employee led Brown out of the room. Sanchez Depo., 20:18–22. Sanchez remembers speaking with another Laidlaw employee about the incident several times afterwards and that employee was shocked and frightened by the incident. *Id.* at 14:6–10. In sum, Lappin has presented evidence that proves the existence of a genuine issue of material fact with regard to the question of whether the battery claim is barred by workers' compensation exclusivity.

### 5. Intentional Infliction of Emotional Distress (Claim 8)

Lappin asserts a claim of intentional infliction of emotional distress ("IIED") against all three defendants.

#### a. IIED Claim Against Laidlaw

 Defendants contend that this claim against Laidlaw, like the battery claim, is preempted by Section 301 of the LMRA.[8] Non-contract based claims may be preempted under Section 301 if their evaluation is "inextricably intertwined with consideration of the terms of [a] labor contract." *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904. The Ninth Circuit has held that state tort claims for IIED are preempted under some circumstances. *See, e.g., Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of Northern Cal.*, 827 F.2d 589, 594 (9th Cir.1987) (claims arose out of employee's discharge or conduct of the defendants in the investigatory proceedings leading up to the discharge). When a claim does not require interpretation of the CBA, on the other hand, preemption is not appropriate. *See Tellez v. Pacific Gas & Elec. Co., Inc.*, 817 F.2d 536, 539 (9th Cir.1987) (IIED claim not preempted because CBA at issue was "silent on work conditions, and vague on disciplinary formalities" that would have provided guidelines for defendant's behavior leading up to plaintiff's suspension).

 A court must make a preliminary determination as to what constitutes "extreme and outrageous conduct" by the defendant in determining whether a plaintiff has established a prima facie case for IIED. *See Miller v. Nat'l Broad. Co.*, 187 Cal.App.3d 1463, 1487, 232 Cal.Rptr. 668 (1986). The CBA is relevant to the determination of whether Laidlaw's behavior was reasonable. *See Miller v. AT & T Network Systems*, 850 F.2d 543, 545 (9th

---

8. Although they do not clearly state as much in their pleading, the Court assumes that defendants only make the preemption argument in relation to the IIED claim against Laidlaw. Lappin's IIED claim is stated against Brown and Choy as well. As will be discussed below, the IIED claim against both individual defendants fails because Lappin has not presented evidence to support it.

Cir.1988); *Kirton v. Summit Medical Center,* 982 F.Supp. 1381, 1386–87 (N.D.Cal. 1997) ("[c]onduct ... might be deemed reasonable because the CBA permits it or deemed unreasonable because the CBA prohibits it."). In this case, Lappin's IIED claim against Laidlaw appears to relate to the company's alleged failure to provide for her "physical and emotional safety and security at work" and the company's failure to take adequate disciplinary action against Brown and Choy. Complaint, ¶¶ 30, 36. The CBA contains provisions that state Laidlaw's responsibilities with regard to these areas. Therefore, the Court must evaluate Laidlaw's conduct based in part on a determination of whether it violated the terms of the CBA. Because resolution of Lappin's IIED claim is substantially dependent upon analysis of the terms of the CBA, the claim is preempted as to Laidlaw.

### b. Sufficiency of Evidence to Support the IIED Claim

 Putting aside concerns about LMRA preemption and workers' compensation exclusivity, Lappin's eighth cause of action for intentional infliction of emotional distress against all defendants fails independently because it is unsupported by evidence. The elements of a prima facie case of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by plaintiff; and (3) plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct. *Conley v. Roman Catholic Archbishop of San Francisco,* 85 Cal. App.4th 1126, 1133, 102 Cal.Rptr.2d 679 (2000). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized commu-

nity." *Cervantez v. J.C. Penney Co.,* 24 Cal.3d 579, 593, 156 Cal.Rptr. 198, 595 P.2d 975 (1979).

 First, as to the IIED claim against Laidlaw, Lappin has not presented evidence of extreme or outrageous conduct. The same is true of her claim against Choy. The claim against Brown seems to be based on the altercation between them and his comments at work. Even were one to assume that Brown engaged in extreme or outrageous conduct, Lappin has not directed the Court to any concrete evidence to establish that she suffered severe or extreme emotional distress as a result of the incident. In the absence of any guidance from counsel, the Court is left to look for evidentiary support independently in the record. It does appear that a psychologist recommended that Lappin not return to work for approximately three weeks after the incident. Lappin Depo., 110:9–111–4. At her deposition, Lappin claims that the "whole thing upsets me" and that she had trouble eating after the incident. *Id.* at 577:23; 596:18–22.

In her opposition pleading, Lappin claims that "the evidence of both Dr. Gerber and Dr. Hsieh show that in fact plaintiff was injured and traumatized due to the attack and remained unable to work for several weeks after the attack." Pl.'s Opp'n, 13:4–6. As support for this contention, she directs the Court to the declaration of her counsel. In that declaration, counsel for Lappin simply states that she attended the depositions of a psychotherapist and a doctor who treated Lappin and provides one sentence summaries of the testimony of each of them. Declaration of Gail Stimmel Braze, 2:5–14. This is hearsay. Plaintiff's counsel has failed to provide admissible evidence, such as the transcript of the depositions or declarations

from either doctor, to support these claims. All defendants are therefore entitled to judgment as a matter of law on Lappin's Eighth Cause of Action for intentional infliction of emotional distress.

### 6. California Constitution Article I, Section 8 (Claim 7)

Lappin's seventh cause of action, against all defendants, alleges that "the discriminatory actions of defendants ... generated by animus toward plaintiff's race, sex or gender violates Article I, Section 8 of the Constitution of the State of California." Complaint, ¶ 90. That section provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

█ Courts have held that claims under this section may be brought only by plaintiffs who have been terminated, constructively discharged, or threatened with termination. *See Strother v. Southern Calif. Permanente Medical Group*, 79 F.3d 859, 872 (9th Cir.1996); *Himaka v. Buddhist Churches of America*, 919 F.Supp. 332, 335 (N.D.Cal.1995). In this case, Lappin claims that she was constructively terminated. In order to prove constructive termination, Lappin must establish that the working conditions were "so intolerable and discriminatory as to justify a reasonable employee's decision to resign." *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.1987). The Ninth Circuit has held that "the plaintiff must at least show some 'aggravating factors,' such as a 'continuous pattern of discriminatory treatment.'" *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir.1989) (quoting *Watson*, 823 F.2d at 361).

█ Lappin claims that she was forced to resign because Laidlaw refused to rectify the hostile environment by changing scheduling orders or work assignments. However, Laidlaw immediately attempted to address the only concern Lappin brought to their attention—her conflict with Brown. An investigation was initiated and the parties to the altercation were given a warning. Lappin did not return to work after she notified Laidlaw about the incident. When Lappin sent Laidlaw a notice of resignation, her supervisor sent her a letter urging her to return and reassuring her that Laidlaw was concerned about her safety. Lappin Depo., Ex. 23. Lappin has failed to present evidence sufficient to create a material issue of fact as to whether she was constructively discharged by Laidlaw. Therefore, defendants are entitled to judgment as a matter of law on Lappin's Seventh Cause of Action for violation of California Constitutional rights.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. The sole remaining claim is Lappin's state law battery claim against Brown. The Court declines to continue to exercise supplemental jurisdiction over the remaining claim (the Fourth Claim for Relief for Battery against Defendant Brown), pursuant to 28 U.S.C. § 1367(c)(3), and therefore also DISMISSES that claim, without prejudice to its re-filing in state court.

**IT IS SO ORDERED.**