**Jerry H. LOVE, Plaintiff,**

v.

**MOTION INDUSTRIES, INC., a Corporation, and Does 1 through 50, Inclusive, Defendant.**

**No. C 02–4955 MJJ.**

United States District Court, N.D. California.

March 8, 2004.

Melanie Grant Jones, Interactive Law Group, San Francisco, CA, for Plaintiff.

Lisa M. Szafranic, Martenson Hasbrouck & Simon, LLP, Atlanta, GA, for Defendant.

## ORDER *GRANTING* DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JENKINS, District Judge.

### INTRODUCTION

This case arises from the employment relationship between Plaintiff Jerry H. Love and his employer, Defendant Motion Industries. Plaintiff's complaint alleges eight causes of action ranging from wrongful termination in violation of California's whistle-blower protection law to intentional infliction of emotional distress. Defendant here moves for summary judgment on all claims. For the reasons that follow, the Court grants Defendant's motion in its entirety.

## FACTUAL BACKGROUND

Defendant is a company engaged in the wholesale distribution of industrial bearings as well as fluid, mechanical, electrical and power transmission components. Declaration of Dave Sharp ("Sharp Decl.") at ¶ 5. Plaintiff met with Dave Sharp, Manager of Defendant's Menlo Park Branch, during January 2000 to discuss possible employment as an Outside Sales Person with Defendant. During the meeting, Plaintiff told Sharp that he wanted to be compensated in the amount of $43,000 per year. Deposition of Jerry H. Love ("Love Dep.") at 54. According to Plaintiff, Sharp told him that after one year his pay would shift from a guaranteed salary to a straight commission based on 15% of gross profits. Love Dep. at 58.

On February 3, 2000, Plaintiff began his employment with Defendant. On the same day, he completed and signed an Application for Employment that stated in pertinent part:

In consideration of my employment, I agree to conform to the rules and regulations of the Company and my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either myself or the Company. I understand that no manager or representative of the Company other than the President or Vice President of the Company has the authority to enter into any agreement for employment for any specified period of time, or make any agreement contrary to the foregoing.

Defendant's Motion for Summary Judgment ("Mot."), Ex. B. Plaintiff also received an employee handbook in connection with his employment which included the following text:

[M]y employment is on an at-will basis. That is, notice of termination/resignation may be given by either party at any time and for any reason. This disclaimer constitutes the complete understanding concerning my employment terms with the Company. No officer or representative of the Company has any authority to enter into any agreement of employment for any specified period or time or to make any agreements, express or implied, that is contrary to the foregoing unless it is reduced to writing and signed by the President of the Company.

Id. Plaintiff signed a document acknowledging that he received the handbook and agreed to abide by the provisions therein. Love Dep. at 68–69.

As an Outside Sales Person with Defendant, Plaintiff's responsibilities included maintaining existing accounts and developing new businesses within a geographical territory, generating sales at the branch, developing new customers, reviewing account information for his customers to ensure that pricing and coding on their accounts was adequate, and participating in branch sales meetings. Love Dep. at 71–73. Sharp was Plaintiff's immediate supervisor throughout his employment with Defendant. Plaintiff alleges that on his first day, Sharp explained that his annual salary would be only $42,000 but that Plaintiff would receive an expense account to make up the $1,000 difference to reach the $43,000 Plaintiff had requested. Plaintiff agreed.[1] Love Dep. at 88. Defendant

---

1. Plaintiff also alleges that Sharp told him he would continue to be employed at his annual salary as long as he performed his job duties in a satisfactory manner. Declaration of Jerry H. Love ("Love Decl.") at ¶ 2. Defendant disputes this account and notes that Plaintiff makes this statement for the first time in his declaration. Defendant's Opposition to Evidence Submitted in Connection with Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 4. In his deposition, Plaintiff previously acknowledged he was an at-will employee. Id.

established an expense account for Plaintiff when he began his employment. Love Dep. at 141.

On November 29, 2000, Plaintiff and Sharp prepared a written Performance Evaluation positively evaluating Plaintiff's performance. In connection with Plaintiff's evaluation, Sharp and Plaintiff discussed areas of Plaintiff's performance where Plaintiff thought he could improve. Love Dep. at 79–83; Mot., Ex. 7.

On January 3, 2001, Sharp sent Plaintiff a written memo citing concerns over Plaintiff's decreased sales for the fourth consecutive month. Love Dep. at 109–13; Mot., Ex. 12. According to Sharp, Plaintiff did not usually achieve one-half of the sales of Steve Hood, the only other outside salesperson in the office. Sharp Decl. at ¶ 17. After Plaintiff responded to Sharp's call for a plan to "save" him, Sharp required Plaintiff to complete Weekly Call Reports regarding customers he called upon during the week. Love Dep. at 130–31.

On February 8, 2001, Plaintiff received a written warning for failure to comply with organizational requirements, including failure to produce name and address information on his top ten accounts. Love Dep. at 129–30; Mot., Ex. 16. Sharp outlined the behavior he expected of Plaintiff, including listing certain information regarding his top accounts, and he cautioned, "this is a minimum requirement needed for continued employment." Mot., Ex. 16. Plaintiff received a second written warning on March 1, 2001, for failure to comply with organizational requirements. Love Dep. at 131–32; Mot., Ex. 18. Both warnings cited termination as a potential consequence for not correcting the underlying problems necessitating the warnings, and Plaintiff acknowledged receipt of both warnings by signing them. Love Dep. at 130–32; Mot. Ex. 16, 18.

On April 1, 2001, Plaintiff was removed from guaranteed salary and placed on straight commission. Plaintiff's sales figures for the month of April entitled him to receive less than the previously guaranteed salary of $3,500 per month. Sharp Decl. at ¶ 28; Love Dep. at 135–36. Sharp discussed Plaintiff's poor performance with him on May 21, 2001, and decided to terminate him. According to Sharp, he terminated Plaintiff because he was not satisfied with Plaintiff's response that his sales would be up by the end of the year. Sharp Decl. at ¶ 33; Deposition of Dave Sharp ("Sharp Dep.") at 129. On May 24, Sharp notified Plaintiff he was being terminated for poor performance. Sharp Decl. at ¶ 33; Love Dep. at 146–47.

Plaintiff offers a concurrent story line that he alleges renders much of the preceding pretextual and meaningless. According to Plaintiff, the problems with Plaintiff's performance were simply "trumped up" charges developed in retaliation for what follows.

Shortly before Plaintiff was hired, Defendant was invited to review bid specifications and bid on the supply of spherical ball bearings for the San Francisco Oakland Bay Bridge West Bay Suspension Towers Project ("Towers Project"). Love Decl. at ¶ 6. While reviewing specifications for the bearings, Plaintiff and David Winkel[2] developed concerns regarding the "corrosiveness factor in a sea-salt-air climate, the potential for slippage of the bearings called for by the bid, and the ability of the ball bearings to support certain weight loads over time." Love Decl. at ¶ 6. Plaintiff presented the discovered safety concerns to his co-workers and superiors, in-

---

**2.** At the time, Winkel was an employee of ball bearing manufacturer SKF USA. Love Decl. at ¶ 6.

cluding at times in front of Sharp. Love Decl. at ¶ 8; Deposition of Steve Hood at 54, 57. Plaintiff submitted a competitive bid on behalf of Defendant to supply spherical ball bearings for the Towers Project. Love Decl. at ¶ 7; Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp."), Ex. F.

In December 2000, due to Defendant's inaction in the face of his concerns, Plaintiff told Sharp that he was going to inform the media of the safety issues he uncovered with Winkel. Love Decl. at ¶ 9–10. After discussing the issue with Defendant's regional manager, Charlie Davis, Sharp later told Plaintiff he did not want the media to be contacted. By that time, Plaintiff had already contacted a Chronicle reporter. Love Decl. at ¶ 11; Sharp Dep. at 134–37. Plaintiff contacted then-State Representative Jackie Speier's office in March 2001 to request her office initiate a governmental investigation into the potential safety hazards on the Towers Project.[3] Love Dep. at 151. When Plaintiff described his contact with Speier's office on May 9, Sharp told him to "find another cross to carry."[4] Plaintiff was terminated on May 21, 2001.

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party does not bear the burden of

proof at trial, the initial burden of showing that no genuine issue of material fact remains may be discharged by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of genuine issues of material fact. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Nor must the moving party support his or her own motion with evidence negating the non-moving party's claim. *See id.*

After the moving party makes a properly supported motion, the responding party must present specific facts showing that contradiction is possible. *British Airways Board. v. Boeing Co.,* 585 F.2d 946, 950–52 (9th Cir.1978). It is not enough for the responding party to point to the mere allegations or denials contained in the pleadings. Instead, it must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. The evidence must be more than a mere "scintilla;" the responding party must show that the trier of fact could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, in reviewing a motion for summary judgment, the Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630–31 (9th Cir.1987). Summary

---

**3.** In opposing summary judgment, Plaintiff alleges for the first time that he also contacted the California Department of Transportation about his concerns. Love Decl. at ¶ 8; Opp. at 10.

**4.** During this time, Plaintiff had independently pursued a breach of contract action against one of Defendant's potential customers. Sharp alleges that he made this remark in reference to Plaintiff's breach of contract action, not his safety disclosures. Sharp Dep. at 137–38.

judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts . . . ." *Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1335 (9th Cir.1980).

## ANALYSIS

### A. Violation of California Labor Code Section 1102.5(b)

 California Labor Code Section 1102.5(b) states that an "employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." To establish a prima facie case for retaliation under Section 1102.5, an employee must show (1) that he engaged in protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action. *Morgan v. Regents of University of California,* 88 Cal.App.4th 52, 69, 105 Cal. Rptr.2d 652 (2000).

Plaintiff argues that he engaged in protected activity when he alerted the Chronicle and State Senator Speier's office of the safety concerns he believes were uncovered during his review of ball bearing specifications relating to the Towers Project. He alleges that Defendant retaliated against him by trumping up poor performance reviews for a period of four to five months before finally terminating him two weeks after Sharp's "find another cross to carry" remark.

Even if Plaintiff minimally satisfies the second and third elements of his prima facie case by establishing an issue of fact as to whether his termination was causally linked to his disclosure of safety concerns, his claim fails as a matter of law because he did not engage in any protected activity. Plaintiff's disclosure does not meet the standard for protected activity under Section 1102.5(b), because the disclosed activity does not violate any federal or state statute, rule, or regulation.

Section 1102.5(b) requires the disclosure of a state or federal violation. Cal. Lab. Code § 1102.5(b). Defendant correctly points out that Plaintiff has failed to allege any specific federal or state violation stemming from Plaintiff's safety concerns. Mot. at 14. In his own testimony, Plaintiff asserts that his safety concerns were based on specifications originating from California Engineering Modern Continental, the subcontractor employed by CalTrans on the project. Love Dep. at 157. Plaintiff has offered no specific facts indicating that these specifications are grounded in any state statute, rule, or regulation.

In response, Plaintiff relies on *Green v. Ralee Engineering,* 19 Cal.4th 66, 78 Cal. Rptr.2d 16, 960 P.2d 1046 (1998), to support his assertion that the disclosure constitutes protected activity because he had "reasonably based suspicions" of unlawful activity. Opp. at 91. However, *Green* is clearly distinguishable on this point. In *Green,* the plaintiff was a quality control inspector who claimed his employer, an airline part manufacturer, wrongfully terminated him in retaliation for his reporting possible violations of administrative regulations governing airline safety, which implemented the Federal Aviation Act of 1958. *Green,* 19 Cal.4th at 66, 78 Cal. Rptr.2d 16, 960 P.2d 1046. The trial court granted summary judgment in favor of the defendant. The appellate court reversed, reasoning that whether or not the defendant violated "significant safety regulations that the FAA promulgated to implement" the Federal Aviation Act was a factual question for trial. *Id.* at 86, 78

Cal.Rptr.2d 16, 960 P.2d 1046. To survive summary judgment, the plaintiff was not required to prove an actual violation as long he reported his "reasonably based suspicions" of the illegal activity. *Id.* at 87, 78 Cal.Rptr.2d 16, 960 P.2d 1046. Nevertheless, the plaintiff's suspicions were based on actual federal regulations as required by Section 1102.5(b).

Here, Plaintiff does not cite any statute, rule, or regulation that may have been violated by the disclosed conduct. Rather, he argues simply that he reasonably believed that the activity violated some unnamed statute, rule, or regulation. More than three years after Plaintiff discovered the alleged safety issue he remains unable to state any statutory or regulatory basis for his claim even when confronted with a direct challenge on this point by Defendant.[5] Plaintiff's silence is telling and indicates a lack of any foundation for the reasonableness of his belief. Defendant's Motion for Summary Judgment with respect to Plaintiff's first cause of action is therefore granted.

**B. Wrongful Discharge in Violation of Public Policy**

■ Although at-will employment relationships are generally terminable at-will, an "employer's right to discharge an at-will employee is subject to limits that fundamental public policy imposes." *Green,* 19 Cal.4th at 71, 78 Cal.Rptr.2d 16, 960 P.2d 1046. However, Plaintiff must show that the protected public interests are "tethered to fundamental policies that are delineated in constitutional or statutory provisions." *Id.* Section 1102.5(b) "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." *Id.* at 77, 78 Cal.Rptr.2d 16, 960 P.2d 1046.

For his public policy claim, Plaintiff relies solely on the interests protected by Section 1102.5(b). For the reasons discussed above, Plaintiff's Section 1102.5(b) retaliation claim fails as a matter of law. Therefore, Plaintiff's public policy claim has no basis in any statutory violation and necessarily fails as well. *See, e.g., Rivera v. National Railroad Passenger Corp.,* 331 F.3d 1074, 1079–80 (9th Cir.2003) (employee could not show wrongful termination in violation of public policy under Section 1102.5(b) where he failed to establish that he disclosed unlawful activity by his employer to a law enforcement or government agency). Accordingly, Defendant's Motion for Summary Judgment on this claim is granted.

**C. Breach of Contract**

Plaintiff contends that Defendant breached their employment contract both by refusing to pay Plaintiff the allegedly agreed upon annual salary of $43,000 and by terminating him without good cause. According to Plaintiff, Sharp explained on Plaintiff's first day that he could pay Plaintiff only $3,500 per month for a total of $42,000 per year but would make up the difference through an expense account. Plaintiff further alleges that Sharp told him that as long as he performed his work satisfactorily, he would remain employed with Defendant. Defendant disputes this account of the conversation. However, on summary judgment this Court is required to draw all inferences in the light most favorable to the non-moving party.

■ For a prima facie case of breach of contract, Plaintiff must establish: (1) a contract; (2) Plaintiff's performance or excuse of performance; (3) Defendant's breach; and (4) resulting damages. *Reic-*

---

**5.** At oral argument, Plaintiff's Counsel asserted for the first time that several OSHA standards may have been violated. However, Counsel still could not point to any standard specifically.

hert v. General Insurance, 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968). A plaintiff fails to state a breach of contract claim where the employer's stated guidelines for employment contract formation are not followed. *Logan v. San Francisco Federal Savings & Loan Associates,* 1998 WL 397911 at *8 (N.D.Cal.1998). The *Logan* court granted Defendant's summary judgment motion, reasoning that no contract could be established from an oral agreement where the savings association's charter required that "all employment contracts shall be in writing and shall be approved specifically by an associations' board of directors." *Id.*

Here, Plaintiff is similarly unable to establish any employment contract through his purported oral agreements with Sharp, because Defendant's employment guidelines clearly state that all employment contracts require written authorization from the President or Vice President and Sharp is neither.[6] Plaintiff had notice of this requirement when he signed Defendant's employment application just below the following text:

> I understand that no manager or representative of the Company other than the President or Vice President of the Company has the authority to enter into any agreement for employment for any specified period of time, or make any agreement contrary to the foregoing.

Mot., Ex. B. Plaintiff does not dispute that he signed this application. Therefore, as in *Logan,* Plaintiff is unable to raise a material issue of fact regarding the existence of an employment contract with Defendant and cannot state a claim for breach of contract regarding unpaid wages.

■ Plaintiff also argues that his termination represented a breach of contract because he alleges that he was terminated without cause. As discussed above, Plaintiff cannot establish any employment contract between himself and Defendant. Nevertheless, under certain circumstances, the presumption of at-will employment status "may be overcome by evidence of contrary intent." *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 677, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). In *Foley,* the California Supreme Court reversed the dismissal of the plaintiff's claim where the plaintiff alleged that the defendant maintained written guidelines that required good cause for termination. *Id.* at 675, 254 Cal.Rptr. 211, 765 P.2d 373.

In his response to Defendant's motion, Plaintiff argues "that a 'for cause' term was implied by the repeated assurances that he would remain employed so long as he continued to perform satisfactorily." Opp. at 14. However, Plaintiff has admitted that his employment was at-will. Love Dep. at 158. Additionally, in stark contrast to *Foley,* Plaintiff signed an employment application which stated that he would be employed at-will, and he acknowledged receiving and understanding Defendant's employee handbook which similarly stated his at-will status.[7] Accordingly, Plaintiff is unable to establish

---

**6.** Even if Plaintiff had alleged that he reasonably believed Sharp had this authority, he still cannot overcome the requirement of written authorization since he claims only oral assurances from Sharp.

**7.** In addition to *Foley,* Plaintiff cites *Guz v. Bechtel National, Inc.,* 24 Cal.4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000), on this point. The *Guz* court distinguished *Foley* in

finding that long and successful service, standing alone, *does not* demonstrate an "implied-in-fact contract right not be terminated at will." *Guz,* 24 Cal.4th at 343, 100 Cal. Rptr.2d 352, 8 P.3d 1089. Plaintiff attempts to distinguish *Guz* but offers no rationale by which the analysis in *Guz* actually supports his argument that his alleged conversations with Sharp created an implied contract.

an implied contract to be terminated only for cause, and Defendant's Motion for Summary Judgment on this claim is therefore granted.

### D. Breach of the Implied Covenant of Good faith and Fair Dealing

The implied covenant of good faith is inherent in every contract. *Logan,* 1998 WL 397911 at *8. Since "the covenant of good faith and fair dealing cannot impose substantive terms and conditions beyond those to which the contract parties actually agreed," where no employment contract can be established, a plaintiff cannot maintain a cause of action for breach of the covenant of good faith and fair dealing. *Lappin v. Laidlaw Transit Inc.,* 179 F.Supp.2d 1111, 1122 (N.D.Cal.2001).

Because, as explained above, Plaintiff is unable to establish any employment contract with Defendant, Plaintiff's implied covenant of good faith and fair dealing claim necessarily fails.

### E. Intentional Infliction of Emotional Distress

In his fifth cause of action, Plaintiff alleges that Defendant intentionally inflicted emotional distress by terminating him in retaliation for his disclosing safety concerns about the Towers Project. Defendant argues this claim is barred by the exclusivity provisions of California's workers compensation laws because Defendant's alleged misconduct arose from "actions which are a normal part of the employment relationship." *Logan,* 1998 WL 397911 at *5; *see also* Cal. Lab.Code § 3600(a). Plaintiff contends that his termination was not a normal part of the employment relationship because it "resulted from an animus that violates the fundamental policy of this state." *Gantt v. Sentry Insurance,* 1 Cal.4th 1083, 1100, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992).

Assuming arguendo that the claim is not preempted, Plaintiff, however, still cannot establish a prima facie case for severe emotional distress. The prima facie case requires a showing of: (1) extreme and outrageous conduct by the defendant with intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) severe or extreme emotional distress; and (3) that the emotional distress was actually and proximately caused by defendant's outrageous conduct. *Lappin,* 179 F.Supp.2d at 1126.

Even if Plaintiff could establish the necessary intent and causation elements, he has not presented factual evidence supporting a finding of *severe* distress. The Ninth Circuit has described severe emotional distress as "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Simo v. Union of Needletrades,* 322 F.3d 602, 622 (9th Cir.2003) (quoting *Kiseskey v. Carpenters' Trust for Southern California,* 144 Cal.App.3d 222, 231, 192 Cal.Rptr. 492 (1983)). Claiming to be tense, nervous, and emotionally hurt does not satisfy this standard. *Id.* Allegations of severe distress may also fail when they lack any evidentiary support from medical professionals. *Lappin,* 179 F.Supp.2d at 1126–27.

In his deposition, Plaintiff described his emotional distress by citing seemingly minor changes in his eating, drinking, and sleeping habits, such as the inability to eat a full meal at times. According to Plaintiff, his wife claimed his eating and drinking habits had "changed a little bit." Plaintiff admits that he did not seek any medical attention for his distress. Love Dep. at 161–62. These allegations fall far short of the high standard of severe emotional distress required to establish a pri-

ma facie case of intentional infliction of emotional distress. Therefore, Defendant prevails on this claim as a matter of law.

**F. Negligence and Negligent Supervision**

Plaintiff's sixth and seventh causes of action for negligence and negligent supervision also fail because Plaintiff does not even address, much less establish, the prima facie elements of these claims. Plaintiff submits no evidence indicating why Defendant owed him a duty, what the duty was, how Defendant breached the duty or how any breach caused damages to him. *See Richardson v. Reliance National Indemnity Co.*, 2000 WL 284211 at *13 (N.D.Cal.2000). Accordingly, Defendant's motion for summary judgment on these claims is granted.

**G. Fraudulent Misrepresentation**

In his final cause of action, Plaintiff claims fraudulent misrepresentation by alleging that Sharp promised to pay him $43,000 per year but proceeded to pay him only $42,000. To establish a prima facie case of fraudulent misrepresentation, Plaintiff must show: (1) a misrepresentation by Defendant; (2) Defendant's knowledge of its falsity; (3) Defendant's intent to defraud; (4) Plaintiff's justifiable reliance; and (5) damages. *Conrad v. Bank of America*, 45 Cal.App.4th 133, 53 Cal.Rptr.2d 336 (1996). Furthermore, the intent to defraud must arise at the time the promise is made. *Id.*

Plaintiff fails to allege any specific facts implicating any actual misrepresentation on the part of Defendant. Plaintiff argues that he entered into an oral agreement with Sharp whereby Defendant would pay him $42,000 per year in salary and compensate him $1,000 through an expense account. Plaintiff does not dispute that he received the $42,000 per year salary or that he received the expense account. He tenders no specific facts explaining any

inability to use the expense account for its express purpose. Therefore, Plaintiff is unable to establish the alleged misrepresentation.

In addition, Defendant pointed out in its motion that Plaintiff had no evidence that Sharp had any intent to defraud him. Plaintiff failed in his opposition brief to set forth competent evidence to support this aspect of his claim. For these reasons, Defendant is entitled to judgment as a matter of law on this claim.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**