Filed 12/15/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MANUEL CONTRERAS, | D085440 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CVRI2101337) |
| GREEN THUMB PRODUCE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge. Reversed with instructions.

Law Office of Alfredo Nava Jr. and Alfredo Nava; Kyle Todd for Plaintiff and Appellant.

Law Offices of J. Patrick Ragan and J. Patrick Ragan; Arias & Lockwood and Christopher D. Lockwood, for Defendant and Respondent.

I. INTRODUCTION

In 2020, Manuel Contreras mistakenly determined his former employer, Green Thumb Produce, Inc. (Green Thumb), was violating the Equal Pay Act (EPA; Lab. Code,[1] § 1197.5) by paying him less than other coworkers performing similar duties. However, Contreras did not believe

---

[1] All further undesignated section references are to the Labor Code.

Green Thumb was paying him less because of his gender, race, or ethnicity. But, " '[t]he [EPA] does not prohibit variations in wages; it prohibits *discriminatory* variations in wages.' " (*Allen v. Staples, Inc.* (2022) 84 Cal.App.5th 188, 194.)[2] This meant the EPA did not protect Contreras from the wage difference of which he complained. When Contreras, relying on the EPA, described to supervisors his dissatisfaction with being paid less than others who did the same work, Green Thumb terminated his employment.

In turn, Contreras sued Green Thumb, asserting three causes of action for wrongful termination. His second cause of action was based on section 1102.5, subdivision (b) (section 1102.5(b)), which prohibits employers from retaliating against employees who report legal violations.

At trial, the jury found in Contreras' favor on all three of his causes of action. Green Thumb filed a motion for partial judgment notwithstanding the verdict (JNOV) claiming the verdict on the whistleblower cause of action was unsupported because Contreras misunderstood the EPA, and his misunderstanding of the law could not provide a proper basis for liability under section 1102.5(b).[3] The trial court agreed, granted the motion, and entered an amended judgment.

On appeal, Contreras challenges the JNOV ruling asserting the evidence at trial adequately supported the jury's verdict on his whistleblower cause of action. We agree, finding substantial evidence supported the jury's

---

[2] Specifically, the EPA states, "[a]n employer shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex [or of another race or ethnicity] for substantially similar work." (§ 1197.5, subds. (a) & (b).)

[3] Green Thumb did not challenge the jury's damage award. The section 1102.5(b) claim allows Contreras to receive attorney's fees.

conclusion that Contreras had reasonable cause to believe Green Thumb violated the EPA, notwithstanding his misinterpretation of that law. We therefore reverse the JNOV ruling and direct the trial court to amend the judgment consistent with the jury's verdict.

## II. BACKGROUND

From 2016 to 2020, Contreras worked at Green Thumb. Green Thumb packaged produce for retailers, and Contreras primarily worked in their sanitation department driving forklifts.

During his employment, Contreras discovered that Green Thumb paid him less than other employees performing similar duties, some of whom had less seniority at the company. Contreras mentioned the pay disparity to his supervisors several times, but they took no action.

In August 2020, Contreras started researching his legal rights because he thought the law required equal pay for equal work. Contreras contacted the Labor Commissioner's Office of San Bernardino County and spoke to a deputy labor commissioner who stated that Green Thumb might be violating the law. The deputy labor commissioner referred Contreras to the EPA and told him he could obtain more information about that law on the Labor Commissioner's website.

Contreras went to that website, printed out a document titled "California Equal Pay Act: Frequently Asked Questions" (FAQ), and read it. The FAQ is a seven-page document with 32 questions and answers. It provides general background information about the EPA and how to file a claim. Based on his discussion with the deputy labor commissioner and his understanding of the FAQ, Contreras believed that Green Thumb violated the state's equal pay laws.

On September 3, 2020, Contreras brought the Labor Commissioner's FAQ sheet with him to work intending to present it to human resources after his shift and to ask for a raise. During his lunchbreak on that day, with the FAQ in hand, Contreras spoke to coworkers attempting to get one of them to be a witness for his meeting with human resources. Miguel Ramos, Contreras's manager, approached Contreras and asked what Contreras had in his hand. Contreras replied that it was literature from the Labor Commissioner's Office that he intended to use to secure a pay raise. Ramos then brought Contreras to the office of Sendy Ochoa, the human resources manager.

Once inside Ochoa's office, Ochoa asked Contreras what paperwork he had with him. Contreras told Ochoa it was for her, handed her the FAQ, and asked for a raise. Contreras looked over the FAQ and returned it to Contreras. She told him he should not be showing the FAQ to employees and asked him why he contacted the Labor Commissioner. Contreras explained that he was trying to get information to prove that he should be getting paid the same as others doing similar work.

After Ochoa denied Contreras's request for a raise, Contreras stated that he would no longer be driving a forklift, intending that statement to mean additional responsibilities that he accrued due to another employee's absence. He did not intend his statement to convey that he would no longer be driving his own assigned forklift. In response, Ochoa accused Contreras of insubordination.

After about 10 minutes, Contreras left Ochoa's office. Ramos followed Contreras and instructed him to go home. When Contreras showed up for work the next day, a security guard escorted Contreras off the premises, informing him that he had been terminated from his job. When Contreras

4

got home, he received a letter from Green Thumb informing him Green Thumb terminated his employment there. The letter stated that Contreras violated company policies and procedures by refusing to follow the lunch schedule, talking to coworkers instead of working, disrupting work by showing coworkers paperwork, refusing to go back to work after discussing his job performance with human resources, and refusing his manager's instructions by stating " 'I am not operating the forklift.' "

Contreras sued Green Thumb in 2021. In the operative first amended complaint filed in 2023, Contreras asserted three causes of action: (1) retaliation for exercising his employment rights (§ 98.6); (2) whistleblower retaliation (§ 1102.5); and (3) wage discussion retaliation (§ 232).

The matter proceeded to a jury trial in 2023. Contreras testified, explaining the events leading up to his firing. Contreras also denied the violations of company policies and procedures stated in his termination letter. Contreras told the jury that based on his discussion with the deputy labor commissioner and the FAQ Contreras reviewed, he believed Green Thumb violated the EPA by paying him unequal wages.

Pursuant to his reading of the FAQ, Contreras explained that he understood the EPA was originally enacted to protect women, but he believed it also applied to men based on the law's constant updates. Contreras identified question 9 as his basis for believing the law applied to his circumstances. Question 9 states: "Can I file a claim if the person who earns more than I do has a different job title? Yes, you may file a claim. Because the Equal Pay Act compares jobs that are 'substantially similar,' the job titles that are being compared do not have to be the same. What is important is whether the work itself is 'substantially similar.' "

5

Contreras acknowledged that because he was not a lawyer, he was uncertain that Green Thumb violated the EPA. However, given his "10th grade education" he believed there might be an EPA violation, the resolution of which would help him get a raise. Contreras also testified, however, that he did not believe his unequal wages were based on his sex, race, or ethnicity.

Vikita Poindexter, Green Thumb's vice president of human resources, testified for Green Thumb. Poindexter stated that while Contreras worked at Green Thumb, he had "an enormous amount of attendance issues," he faced several disciplinary actions, he violated the code of conduct, and other employees complained about him. She opined that Green Thumb was overly lenient with Contreras and should have terminated Contreras much earlier.

The trial court used CACI No. 4603 to instruct the jury on Contreras's section 1102.5(b) cause of action. Pursuant to that instruction, the trial court informed the jury that to prevail, Contreras had to prove that he had "had reasonable cause to believe that [Green Thumb] was in violation of state law regarding equal pay." The instruction was modified to state, "CONTRERAS only had to have a reasonable belief that [Green Thumb] was violating state law. That belief did not have to be, in fact, legally correct under the law."[4]

The jury found in Contreras's favor on all three causes of action. The jury awarded Contreras $53,000 in past economic damages, $72,428 in future economic damages, and $47,000 in past non-economic damages.

On August 18, 2023, Green Thumb filed its JNOV motion. Challenging only the second cause of action, Green Thumb argued there was insufficient evidence because Contreras admitted his pay disparity was not based on sex,

[4] This modification is consistent with our conclusion below. Further, there is no indication that Green Thumb challenged this modification during trial, nor does Green Thumb challenge it on appeal.

6

race or ethnicity, and Contreras's mistaken belief that Green Thumb violated the EPA could not create liability under section 1102.5.

On August 25, 2023, the trial court entered judgment against Green Thumb in the amount of $172,428, reflecting the jury's damage award. On September 8, 2023, the trial court filed an amended judgment, adding $20,000 in statutory penalties for Green Thumb's violations of sections 98.6 and 1102.5.

On November 3, 2023, the trial court granted the partial JNOV motion, finding that "based on [Contreras's] own testimony, he had not made any complaints of any violation of law and that [Contreras] cannot make up a non-existent law to gain § 1102.5 protections." The trial court entered a second amended judgment on November 20, 2023, reflecting its ruling on the motion. The second amended judgment awarded Contreras a total of $182,428 based on the jury's determination of damages and $10,000 in statutory penalties for Green Thumb's violation of section 98.6. Contreras appealed from the second amended judgment, challenging the trial court's ruling on the partial JNOV motion.

## III. DISCUSSION

Contreras argues there was substantial evidence that he reasonably believed Green Thumb violated the EPA. Green Thumb argues Contreras's beliefs were unreasonable because the FAQ informed Contreras that the EPA only applied if the disparity in wages was based on sex, race or ethnicity, and Contreras admitted that was not the case. Green Thumb further contends that Contreras improperly based his section 1102.5 claim on nonexistent or inapplicable statutes. We agree with Contreras.

*A.    Standards of Review*

7

" ' "Questions of statutory interpretation . . . present questions of law, which we review de novo." ' " (*Davis Boat Manufacturing-Nordic, Inc. v. Smith* (2023) 95 Cal.App.5th 660, 672.) We therefore independently review whether Contreras's mistaken interpretation of the EPA necessarily defeats his section 1102.5(b) claim. Finding that it does not, we move on to address the trial court's ruling on the JNOV motion under the substantial evidence standard.

" 'A motion for [JNOV] may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.' [Citation.] The standard of review on appeal is the same: 'whether any substantial evidence— contradicted or uncontradicted—supports the jury's conclusion.' " (*I.C. v. Compton Unified School Dist.* (2025) 108 Cal.App.5th 688, 698.) Under this "highly deferential" standard of review, we must "accept all evidence supporting the trial court's order[,] . . . draw all reasonable inferences to affirm the trial court," and "[w]e do not reweigh the evidence." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581.)

B.     *Section 1102.5*

Section 1102.5 is "California's general whistleblower statute." (*Carter v. Escondido Union High School Dist.* (2007) 148 Cal.App.4th 922, 933.) As is relevant here, section 1102.5(b), prohibits an employer from retaliating "against an employee for disclosing information . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute." (§ 1102.5(b).) This provision " 'reflects the broad public policy interest in encouraging workplace whistle-blowers to

8

report unlawful acts without fearing retaliation.' " (*People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 723 (*Kolla's*).) "In developing the statute, the relevant committees spoke clearly and repeatedly about the purposes and reasoning behind the enactment and expansion of section 1102.5(b): to protect workers, to encourage disclosure, and to promote compliance with employment-related laws and regulations." (*Id.* at p. 730.)

"[T]he protections of section 1102.5(b) apply only where the disclosing employee 'has reasonable cause to believe that the information discloses a [legal] violation.' " (*Kolla's*, *supra,* 14 Cal.5th at p. 734.) Accordingly, "the relevant inquiry is not whether the conduct 'actually violated' any specific statute or regulation, but whether the plaintiff '*reasonably believed* that there was a violation.' " (*Killgore v. SpecPro Professional Services*, *LLC* (9th Cir. 2022) 51 F.4th 973, 988 (*Killgore*); see also, *Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 719 ["Unlike retaliation under . . . section 1102.5[(b)], in which the employee must show only that he or she *reasonably believed* that there was a violation of a statute, rule, or regulation, section 1102.5[, subdivision ](c) requires a showing that the activity in question *actually would* result in a violation or noncompliance with a statute, rule, or regulation"].) Section 1102.5(b) requires "objective reasonableness" (*Kolla's*, at p. 734) and it "does not protect employees who do not believe or who unreasonably believe that the information they are disclosing shows a violation of the law" (*id.* at p. 731).

C.    *Analysis*

    1. Contreras's Mistaken Interpretation of the EPA Does Not Necessarily Defeat His Section 1102.5 Claim

    At the outset, we observe that when assessing the reasonableness of an employee's mistaken beliefs under section 1102.5, there are three potential

9

scenarios. The employee could be mistaken about his or her understanding of (1) the law, (2) the facts, or (3) the law and the facts. In this case we confront the first scenario, but we see no reason why the type of mistake should be controlling. We find the proper focus is on the reasonableness of an employee's beliefs, and preserving the legislative intent to encourage workers to report activity they believe is unlawful.

Green Thumb is correct that a section 1102.5 claimant may not rely on a perceived violation of a nonexistent law. "To have a reasonably based suspicion of illegal activity, the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed." (*Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 592; see also *Love v. Motion Industries, Inc.* (N.D.Cal. 2004) 309 F.Supp.2d 1128, 1135 [rejecting § 1102.5(b) claim where plaintiff did "not cite any statute, rule, or regulation that may have been violated" and instead "argue[d] simply that he reasonably believed that the activity violated some unnamed statute, rule, or regulation"].)

But this is not a case where Contreras claimed a violation of "some unnamed statute, rule, or regulation." (*Love v. Motion Industries, Inc., supra,* 309 F.Supp.2d at p. 1135.) Instead, Contreras "point[ed] to some legal foundation for his suspicion" (*Ross v. County of Riverside, supra,* Cal.App.5th at p. 592); namely, the EPA.

Further, Contreras's misinterpretation of the law does not necessarily undermine his section 1102.5(b) claim. As stated above, section 1102.5(b) only requires an employee to have "*reasonable cause*" to believe that a law has been violated. (Italics added.) There is no requirement that the employee prove an actual violation. (*Killgore, supra,* 51 F.4th at p. 988; see also, *Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1345 ["

10

'[A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his "reasonably based suspicions" of illegal activity.' "].)  As such, section 1102.5 may provide relief for an employee who reasonably believed a legal violation occurred despite incorrectly analyzing the relevant law.

Nor does common sense dictate a different result as Green Thumb suggests.  According to Green Thumb, our interpretation would allow an employee to recover under section 1102.5(b) under the mistaken belief that an employer is legally required to give a 100 percent pay raise every year, or that women must be paid twice as much as men for the same work.  This argument ignores section 1102.5(b)'s "objective reasonableness" requirement. (*Kolla's*, at p. 734.)  The hypothetical mistaken legal interpretations cited by Green Thumb are unreasonable, precluding any relief under the statute.

Finally, we must consider the purpose of section 1102.5(b), which is to " 'encourage[e] workplace whistle-blowers to report unlawful acts without fearing retaliation.' " (*Kolla's*, *supra,* 14 Cal.5th at p. 723.)  Indeed, accepting Green Thumb's interpretation would defeat the Legislature's purpose in enacting the law.  It would deprive employees of the statute's protection simply because the workers have no legal training and lack the expertise to properly interpret a statute.  Such employees would be reluctant to report suspected violations for fear they misunderstood the law.

Based on the foregoing, while a lay employee's incorrect legal interpretation may be unreasonable under some circumstances, we see no basis to find that it will always be unreasonable.  Rather, "[r]easonableness is generally a question of fact to be resolved by a jury." (*Edgerly v. City of Oakland* (2012) 211 Cal.App.4th 1191, 1206.)  Accordingly, Contreras's incorrect legal analysis does not necessarily bar his section 1102.5 claim.

11

<u>2. Substantial Evidence Supports the Jury's Determination that</u>
<u>Contreras Had Reasonable Cause to Believe Green Thumb Violated the EPA</u>

Based on his discussion with a deputy labor commissioner, and his reading of the FAQ, Contreras believed Green Thumb violated the EPA. Although the deputy labor commissioner did not make a definitive determination, stating only that Green Thumb might have violated the law, it is reasonable for a lay person to give that assessment credit. After all, the Labor Commissioner enforces California's labor laws. (*Kilby v. CVS Pharmacy, Inc.* (2016) 63 Cal.4th 1, 13.)

As for his reading of the FAQ, Contreras explained that he interpreted the EPA as originally protecting women but it was later expanded to include men. This is consistent with the first two questions in the FAQ. Question 1 reflects that the EPA originally "prohibited an employer from paying its employees less than employees of the opposite sex for equal work," and that recent legislation "strengthened the Equal Pay Act in a number of ways." Question 2 then describes "the most significant changes to the Equal Pay Act," and the first bullet point under that questions states, "[r]equiring equal pay for employees who perform 'substantially similar work,' when viewed as a composite of skill, effort, and responsibility." Of the six bullet points under question 2, only one mentions sex, and none mention race or ethnicity. Accordingly, a lay person might interpret these first two questions as stating that the EPA requires equal pay for substantially similar work regardless of whether a protected class was involved.

Contreras also told the jury that his beliefs were based on question 9, which states that an employee may "file a claim if the person who earns more . . . has a different job title . . . [b]ecause the Equal Pay Act compares jobs that are 'substantially similar.'" Again, this question does not refer to

protected classes and is therefore potentially misleading regarding the required elements of an EPA claim. Similarly, more than half of the questions in the FAQ omit sex, race, or ethnicity. The EPA's name also increases the potential for confusion, merely referencing equal pay with no mention of protected classes.

We acknowledge that as judges with years of legal education and experience, our reading of the entire FAQ correctly reflects that the EPA only prohibits discriminatory wage variations based on sex, race, or ethnicity. But a lay person with no formal legal training could easily misinterpret the FAQ similarly to Contreras, especially when told by a deputy labor commissioner that there was a potential violation.

And that is why the decision in this case properly belonged to a jury of Contreras's peers. The jurors had the FAQ to read for themselves, and they determined that Contreras's mistaken legal analysis was reasonable from the perspective of a layperson. Although one could reach a different conclusion, that is not our standard of review. (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429, fn. 5 [" 'So long as there is "substantial evidence," the appellate court *must affirm* . . . even if the reviewing justices personally would have ruled differently had they presided over the proceedings below, and even if other substantial evidence would have supported a different result.' "].) Drawing all inferences in support of the judgment as we must, based on the deputy labor commissioner's statement of a possible violation, the potentially unclear language in the FAQ, and Contreras's testimony, the jury's reasonable cause determination is sufficiently supported.

In sum, notwithstanding Contreras's mistaken interpretation of the EPA, there was sufficient evidence for the jury to conclude that Contreras

13

had reasonable cause to believe Green Thumb violated that law.  Accordingly, the trial court erred in granting the partial JNOV motion.

## IV. DISPOSITION

The judgment is reversed.  On remand the trial court shall issue an amended judgment consistent with the first-amended judgment entered on September 8, 2023.  Contreras is awarded costs on appeal.


RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

14